2000-NMSC-003

993 P.2d 727

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arthur LOPEZ, Defendant–Appellant.**

No. 25,280.

Supreme Court of New Mexico.

Dec. 28, 1999.

Stephen Stevers and Associates, Stephen Stevers, Las Cruces, for Appellant.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

MINZNER, Chief Justice.

{1} Defendant Arthur Lopez appeals from a judgment and sentence entered following a jury trial at which he was convicted of first degree murder, *see* NMSA 1978, § 30–2–1(A)(1) (1994), false imprisonment, *see* NMSA 1978, § 30–4–3 (1963), and tampering with evidence, *see* NMSA 1978, § 30–22–5 (1963). We have jurisdiction under Rule 12–102(A)(1) NMRA 1999. On appeal, Defendant contends that the district court erred in admitting a statement as a hearsay exception under Rule 11–804(B)(5) NMRA 1999 and in refusing to instruct the jury on self defense. We affirm.

### I.

{2} In the early morning of October 13, 1996, Noah Rodriguez died. Defendant made several statements to Leo Arguello, Anna Jimenez, Crystal Gutierrez, Armando Magana, and Detective Gary Johnson describing the events of October 13, 1996. The following facts were presented at trial through these witnesses as well as a taped statement Magana gave the police.

{3} On October 13, Rodriguez was at Defendant's apartment in Santa Fe, New Mexico. Rodriguez and Defendant were drinking. Defendant was "ingesting" cocaine. Rodriguez made a sexual overture; Defendant rebuffed him and told him to leave. Rodriguez drew a pocket knife. Defendant grabbed a knife from the kitchen, inflicted twenty-one stab wounds to Rodriguez's neck and head, seventeen stab wounds to his hands and arms, and sixteen stab wounds to his trunk. Defendant threw Rodriguez's body on a porch outside the apartment to avoid blood on the carpet and later placed the body in the trunk of Rodriguez's car. Defendant then took a large rock and crushed Rodriguez's skull.

{4} Defendant drove south of Santa Fe in Rodriguez's car, placed his body in a culvert on Highway 41 south of Galisteo and returned to the apartment, parking Rodriguez's car nearby. That evening witnesses saw bloodstains on the porch, bed, and carpet of the apartment.

{5} Defendant was tried twice. During the first jury trial, Magana refused to take the stand and testify. The trial court held Magana in contempt. Arguello was also absent from the first trial; he had escaped from incarceration. Both witnesses had given the Santa Fe Police Department taped statements, and the trial court admitted these statements under Rule 11–803(X) NMRA 1999. The jury found Defendant guilty of three counts of tampering with evidence but did not agree on the remaining charges.

{6} At the second trial, a hearing was held outside the presence of the jury to determine whether Magana and Arguello would testify regarding the events of October 13th and statements made by Defendant after the murder. Arguello agreed to testify; however, Magana once again refused. The trial court ordered Magana to testify and, when he refused, found him in contempt. The State then sought admission of his taped statement and the trial court admitted it under Rule 11–804(B)(5).

{7} Magana's statement contained evidence of the murder and the cleaning of the knife. Magana stated that when he arrived at Defendant's apartment, Defendant was cleaning bloodstains from the floor with a rag. Defendant explained Rodriguez had started "getting fresh;" Defendant grabbed a kitchen knife and stabbed Rodriguez. Defendant then told Magana that he placed Rodriguez's body in the trunk of a car, drove to an unknown destination, disposed of the body, and walked home. Magana also described a long kitchen knife with a thin blade, which Defendant displayed to him. It was covered with dried blood. Upon seeing the knife, Magana told Defendant to clean it.

{8} The jury convicted Defendant of first degree murder, false imprisonment, and one count of tampering with evidence, which concerned disposal of the murder weapon. He brought a timely appeal.

### II.

{9} Defendant contends that Magana's taped statement should have been excluded under the hearsay rule. *See* Rule 11–802

NMRA 1999 ("Hearsay is not admissible except as provided by these rules or by other rules promulgated by the supreme court or by statute.") He contends the trial court erred in admitting the statement under a catch-all exception. *See* Rule 11–804(B)(5).

{10} Generally, "we review a trial court's admission of evidence under an exception to the hearsay rule only for an abuse of discretion." *State v. Torres*, 1998–NMSC–052, ¶ 15, 126 N.M. 477, 971 P.2d 1267. Admission of hearsay, however, may violate a defendant's constitutional right to confrontation. *See Idaho v. Wright*, 497 U.S. 805, 814, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). When a defendant alerts the trial court to a confrontation issue with a proper objection, he or she raises a question of law. *See State v. Ross*, 1996–NMSC–031, 122 N.M. 15, 22, 919 P.2d 1080, 1087. On appeal, we review the trial court's decision de novo. *See State v. Ruiz*, 120 N.M. 534, 536, 903 P.2d 845, 847 (Ct.App.1995).

{11} As a preliminary matter, we consider whether Defendant "preserved the confrontation issue for appellate review." *Ross*, 122 N.M. at 22, 919 P.2d at 1087. At the hearing prior to trial, Defendant timely objected to the introduction of the taped statement on several grounds, including an objection based on his inability to cross examine or confront the witness. Although Defendant's objection did not specifically mention the Sixth Amendment or Article II, Section 14 of the New Mexico Constitution, his objection was sufficient to bring to the attention of the trial court his claim that the admission of the taped statement would violate his constitutional right to confront witnesses against him. *See id.* at 23, 919 P.2d at 1088; *cf. State v. Lucero*, 104 N.M. 587, 591, 725 P.2d 266, 270 (Ct.App.1986) (holding objections did not alert the trial court to a claim of constitutional error).

{12} Defendant's objection differs from the objections made in *State v. Mora*, 1997–NMSC–060, ¶ 47 n. 1, 124 N.M. 346, 950 P.2d 789, and *Lucero*, 104 N.M. at 591, 725 P.2d at 270. In *Mora*, the "[d]efendant did not timely object to the admission of [a witness's] statement on confrontation grounds." 1997–NMSC–060, ¶ 47 n. 1, 124 N.M. 346, 950 P.2d

789. We noted that the defendant in that case objected to the introduction of the deceased witness's statement to the investigating officer only on general hearsay grounds and never raised or alluded to constitutional violations. *See id.* Similarly, in *Lucero*, the defendant also made general hearsay objections, which the Court of Appeals described as directed "to the adequacy of the foundation." 104 N.M. at 590, 725 P.2d at 269.

{13} In this case, Defendant's objection, based on the Confrontation Clause, adequately preserved for judicial review his appellate claim. It was specific and inclusive. It alerted the trial court to both the relevant evidentiary rules and the claim of constitutional error.

{14} The Confrontation Clause of the Sixth Amendment is made applicable to the states through the Fourteenth Amendment. *See Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). "The right of confrontation is thus one of the elements of 'due process of law' that the Fourteenth Amendment secures for criminal defendants in state court proceedings." *Ross*, 122 N.M. at 22–23, 919 P.2d at 1087–88. The constitutional right of confrontation and the evidentiary rule against hearsay are intricately related in that they both are intended to protect the fundamental right of the accused to receive a fair trial. *See id.* at 23, 919 P.2d at 1088.

{15} In New Mexico,

the Confrontation Clause permits admission of a non-available declarant's hearsay statement if it falls within a "firmly rooted exception" to the hearsay rule. If the disputed statement does not fall within a firmly rooted hearsay exception, then there must be "particularized guarantees of trustworthiness" equivalent to those associated with a firmly rooted exception.

*See id.* (citations omitted) (quoting *Wright*, 497 U.S. at 815, 110 S.Ct. 3139 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980))). By definition, a catch-all exception is not a firmly rooted hearsay exception. *See* 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evi-*

*dence* § 807.03[2][c], at 807–18.1 (Joseph M. McLaughlin, ed., 2d. ed.1999) (discussing federal law and the analogous residual exception). Because a catch-all exception is not firmly rooted, Magana's statement could only be admitted if independent particularized guarantees of trustworthiness were present. *See Ross*, 122 N.M. at 24, 919 P.2d at 1089. Thus, "[w]hen a court can be confident . . . that 'the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility,' the Sixth Amendment's residual 'trustworthiness' test allows the admission of the declarant's statements." *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999) (quoting *Wright*, 497 U.S. at 820, 110 S.Ct. 3139 and addressing the admissibility of a statement against penal interest). This requirement protects Lopez's confrontation rights. *See Ross*, 122 N.M. at 23, 919 P.2d at 1088.

{16} "[S]tatements offered under the residual exception are considered 'presumptively unreliable and inadmissible under the Confrontation Clause' unless they possess sufficient guarantees of trustworthiness to permit their admission into evidence." 5 Weinstein & Berger, *supra*, § 807.03[2][c] at 807–18.1–18–2 (quoting *Wright*, 497 U.S. at 818, 110 S.Ct. 3139). We conclude that statements offered under a New Mexico catch-all exception are also "presumptively unreliable and inadmissible." *See id.* In this case, the State failed to show sufficient guarantees of trustworthiness to admit Magana's statement in its entirety and thus failed to overcome the presumption that the statement was unreliable and inadmissible under the Confrontation Clause.

{17} In evaluating the trustworthiness of the statement, this Court considers "four factors leading to unreliability: (1) ambiguity; (2) lack of candor; (3) faulty memory; and (4) misperception." *Ross*, 122 N.M. at 24, 919 P.2d at 1089. We do not consider "evidence that corroborates the veracity of the statement," *id.* at 23, 919 P.2d at 1088, but only the "circumstances surrounding the making of each . . . statement[ ]." *Id.* at 24, 919 P.2d at 1089. Three of the factors, ambiguity, faulty memory, and mis-

perception, present little concern in this case. The original tape recording of Magana's statement was produced at trial. The record reflects that Magana was arrested November 2, 1996, on an unrelated auto burglary charge and that he offered his statement shortly after he was arrested. Defendant told Magana about killing Rodriguez and showed Magana the weapon covered in dried blood. The brief interval between Magana's conversation with Defendant and the physical evidence Magana observed, coupled with the above facts, reduces significantly the dangers of ambiguity, faulty memory, and misperception.

{18} The fourth factor, lack of candor, is a more difficult question for two reasons. First, Magana was under arrest and in custody. *See State v. Pacheco*, 110 N.M. 599, 603, 798 P.2d 200, 204 (Ct.App.1990) (discussing the risk that a declarant who made a statement during questioning by the police was not candid). Second, at trial Magana claimed that he talked to the police because they threatened him. A statement obtained during questioning by the police is not per se unreliable; rather, circumstances that indicate unreliability must be present. *See id.* (characterizing a motive to lie as a significant risk declarant was not candid). Some circumstances in this case favor admissibility. The statement itself indicates that no promises or threats were made by Detective Johnson or Detective Ramirez in exchange for Magana's cooperation. Magana was not charged with any offenses relating to murder at the time his statement was obtained and his description of Defendant's statements, the crime scene, and the murder weapon were detailed. Finally, by telling the detectives he instructed Defendant to clean the kitchen knife, Magana exposed himself to additional criminal liability as an accessory for tampering with evidence. *See* § 30–22–5 (tampering with evidence); NMSA 1978, § 30–1–13 (1972) (accessory to crime). Nevertheless, the pending auto burglary charges gave Magana a motive to lie. In fact, he contended at trial that he spoke with the police because they threatened him.

{19} We cannot ignore the possibility that Magana may have hoped for

leniency. Therefore we conclude that Magana's statement should not have been admitted under Rule 11–804(B)(5), because of the Confrontation Clause. His statement, as a whole, lacks sufficient independent indicia of reliability. In reaching this conclusion, we recognize that a portion of the statement inculpates Magana and exposes him to additional criminal liability. In that portion, Magana observes Defendant displaying the long kitchen knife covered with dried blood, and Magana instructs Defendant to clean it. In that portion, Magana made no attempt to shift blame from himself to Defendant, and he created a risk of liability not previously present. Therefore, we also conclude that the inculpatory portion of Magana's statement was admissible under Rule 11–804(B)(3) NMRA 1999, an exception for statements against penal interest. That portion of the statement contained particularized guarantees of trustworthiness.

{20} We believe, however, that on the facts of this case, the error was harmless. "Because [Lopez] has invoked his rights under the Confrontation Clause, we apply the constitutional standard of review, 'harmless beyond a reasonable doubt.'" *State v. Woodward,* 121 N.M. 1, 9, 908 P.2d 231, 239 (1995) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)); *accord State v. Martinez,* 1996–NMCA–109, ¶ 19, 122 N.M. 476, 927 P.2d 31.

{21} The non-inculpatory portions of Magana's taped statement provided cumulative evidence. Arguello, Jimenez, and Gutierrez all testified that Lopez said he stabbed Rodriguez and that when they arrived at the apartment they saw blood on the porch, bed, and carpet. Arguello also testified that Lopez told him that he stabbed Rodriguez, threw his body outside on the porch so that he would not bleed all over the carpet, threw the body into the trunk of Rodriguez's car, and then snapped Rodriguez's neck with a rock. The testimony of these three witnesses, in addition to all the other physical evidence introduced by the State, provides substantial evidence to support the murder conviction without reference to Magana's

statement. Each witness described substantially the same events, same statements, and same description of the apartment. There was no substantial conflicting evidence to discredit the State's evidence. For these reasons, we hold that admission of Magana's taped statement was harmless beyond a reasonable doubt. *See Woodward,* 121 N.M. at 10, 908 P.2d at 240 (recognizing the erroneous admission of cumulative evidence to be harmless error).

### III.

{22} Defendant also maintains that the trial court erred by denying his proffered jury instruction on self defense. The trial court concluded there was insufficient evidence to support all the elements of UJI 14–5171 NMRA 1999. We agree.

{23} To support an instruction on self defense, there must be evidence that "the defendant was put in fear by an apparent danger of immediate death or great bodily harm, that the killing resulted from that fear, and that the defendant acted as a reasonable person would act under those circumstances." *State v. Branchal,* 101 N.M. 498, 500, 684 P.2d 1163, 1165 (Ct.App.1984). We agree "[a]n instruction on a claim of self defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim." *State v. Duarte,* 121 N.M. 553, 556, 915 P.2d 309, 312 (Ct.App.1996). "[W]here self-defense is involved in a criminal case and there is any evidence, although slight, to establish [such defense], it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly on all phases of the law on [that] issue...." *State v. Heisler,* 58 N.M. 446, 455, 272 P.2d 660, 666 (1954). However, we interpret this standard to require evidence that is "sufficient to allow reasonable minds to differ as to all elements of the defense." *Branchal,* 101 N.M. at 500, 684 P.2d at 1165. We affirm *Branchal:* a self defense instruction is required "whenever a defendant presents evidence sufficient to allow reasonable minds to differ as to all elements of the defense." *Id.* The trial court correctly applied this standard in denying Lopez's requested instruction on self defense.

{24} At trial, the evidence most favorable to support an instruction of self defense was produced by Jimenez and Johnson. Jimenez testified that when she saw Defendant after the murder, he had a three-inch vertical wound on his right cheek. She also testified that Defendant said he was injured when he attempted to take a knife from Rodriguez. Johnson noted that on October 31 Defendant had a cut on the bridge of his nose and a scar below his right eye. Several other witnesses testified Defendant said that he stabbed Rodriguez because he pulled a knife.

{25} We conclude there was sufficient evidence of the first element: "an appearance of immediate danger of death or great bodily harm." UJI 14–5171; see Branchal, 101 N.M. at 499, 684 P.2d at 1164. The evidence of an appearance of immediate danger would support an inference that Defendant was put in fear. The jury instruction, however, also requires evidence that Defendant killed Rodriguez because of that fear and that he acted reasonably when he killed. See id. at 500, 684 P.2d at 1165. We conclude there was insufficient evidence to allow reasonable minds to differ on the second and third elements.

{26} Defendant inflicted fifty-four stab wounds upon Rodriguez and crushed his skull. These repetitive, violent actions suggest conduct fueled by hatred or by rage or other strong emotion, but not by fear. We do not believe there was sufficient evidence to support a finding that Defendant killed in fear or a finding that he acted reasonably in killing. In State v. Martinez, 95 N.M. 421, 423, 622 P.2d 1041, 1043 (1981), we held that there was insufficient evidence of self defense when a defendant shot the victim, wrapped a cord around his neck, and beat him with such force as to smash his skull. In State v. Chavez, 99 N.M. 609, 610–11, 661 P.2d 887, 888–89 (1983), we held that there was insufficient evidence of self defense when a store patron drew a knife while the defendant was robbing a convenience store. In State v. Najar, 94 N.M. 193, 194–95, 608 P.2d 169, 170–71 (Ct.App.1980), the defendant's statement indicated that he was drunk, heard shots from an altercation, fetched his gun, and fired two shots; there was evidence another person shot first and barely missed the defendant. Id. The Court of Appeals held there was evidence of apparent danger, but no evidence to support an "inference that defendant was put in fear by the apparent danger or that defendant shot because of fear;" the Court concluded the trial court properly refused an instruction on self defense. Id. at 195, 608 P.2d at 171. Similarly, in this case, we conclude that the trial court properly refused to instruct the jury on self defense.

## IV.

{27} The trial court erred in admitting those portions of Magana's statement that provided cumulative evidence of various admissions of guilt made by Defendant, but the error was harmless. The trial court properly refused Defendant's request for an instruction on self defense. Defendant's convictions for first degree murder, false imprisonment, and tampering with evidence are affirmed.

{28} **IT IS SO ORDERED.**

SERNA, MAES, and BACA, JJ., specially concurring.

FRANCHINI, J., dissenting.

BACA, Justice (Specially Concurring).

{29} I concur in the result reached by the majority in this case. I agree that the errors at issue are harmless and therefore the Defendant's sentence should be affirmed. However, I write separately because I can not concur in the analysis contained in Part II of the majority's opinion with regard to the admission of Magana's statement. The majority's legal analysis is accurate, however I can not agree with their application of the law to the facts of this case. The majority's "lack of candor" analysis is cursory and I believe sets a dangerous precedent by unduly restricting the admission of hearsay evidence under Rule 11–804(B)(5) NMRA 1999. Furthermore, the facts of this case support the veracity of the statement and therefore its admission.

{30} The majority sets forth the proper Confrontation Clause analysis under State v.

*Ross,* 1996–NMSC–031, 122 N.M. 15, 919 P.2d 1080. *Ross* articulated the four-factor analysis used to evaluate the trustworthiness of a hearsay statement: (1) ambiguity; (2) lack of candor; (3) faulty memory; and (4) misperception. 122 N.M. at 24, 919 P.2d at 1089. The majority decided that Magana's statement lacked candor and therefore its admission at the trial court violated the Federal Confrontation Clause. *See ante* at ¶ 19. The majority made three assertions to justify this result: (1) "Magana was under arrest and in custody [when he made the statement]", (2) "Second, at trial Magana claimed that he talked to police because they threatened him"; and (3) "[T]he pending auto burglary charges gave Magana a motive to lie." *See ante* at ¶ 18. I do not believe that these three assertions are sufficient to warrant a finding of a "lack of candor" sufficient to exclude the statement.

{31} I recognize there is a presumption against the admission of hearsay statements offered under Rule 11–804(B)(5). *See Idaho v. Wright,* 497 U.S. 805, 818, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (citing *Lee v. Illinois,* 476 U.S. 530, 543, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)) (noting that hearsay statements that "do not fall within a firmly rooted hearsay exception ... are 'presumptively unreliable and inadmissible for Confrontation Clause purposes....' "). However, I believe that sufficient evidence exists to support the veracity and reliability of Magana's statement and overcome this presumption, and as such, I believe the statement was properly admitted.

{32} First, as the majority concedes, the statement itself expressly indicates that no promises or threats induced Magana's cooperation. *See ante* at ¶ 18. A review of the taped statement reveals that a detective asked Magana if any threats or inducements were given to him and he clearly and unequivocally responded, "No Sir." Then a detective followed up by asking if Magana was making the statement on his own prerogative, and Magana responded in the affirmative. Further, the cadence of the discussion indicates that Magana was volunteering information willingly and of his own accord. Magana often responded to very open ended questions with fact-specific answers. Therefore, I think the statement itself is strong evidence of its veracity.

{33} Second, Detective Ramirez, one of two detectives who took Magana's statement, was the sponsoring witness for the admission of the taped discussion. Therefore, Detective Ramirez was available for cross-examination regarding the circumstances surrounding the making of Magana's statement. During the State's examination of Detective Ramirez, he testified under oath, that no threats or promises were ever made as inducement for Magana's statement. The defense, when given the opportunity to cross-examine Detective Ramirez, chose not to inquire further into the circumstances surrounding the taping of Magana's statement. I believe Detective Ramirez' unchallenged, sworn testimony provides further evidence of the statement's veracity.

{34} Third, I can find no other circumstances surrounding Magana's statement to the police that suggests a lack of candor. Magana was in police custody as the majority indicates, however he was in custody on an unrelated auto burglary charge. Therefore, Magana was not an accomplice seeking to shift blame to another individual as the United States Supreme Court has recently found troubling. *See Lilly v. Virginia,* 527 U.S. 116, 128, 119 S.Ct. 1887, 1899, 144 L.Ed.2d 117 (1999) (holding, "The decisive fact, which we make explicit today, is that accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in our Confrontation Clause jurisprudence."). The record contains little explanation of the relationship between Magana and the Defendant. I would be more suspicious of the statement if Magana harbored ill will toward the Defendant, or had some other reason to lie. However, absent further information, I do not find the same motive to lie that the majority identified. Further, I am unwilling to participate in the inference that simply because an individual is in police custody we are to distrust their statement.

{35} The trial judge in this case relied on the existence of the external corroborating evidence to support the admission of Maga-

na's statement. I believe his reliance on this external evidence may have been error given the current status of the law. In this Confrontation Clause analysis, we are concerned with finding "particularized guarantees of trustworthiness" by looking at the "totality of the circumstances." *Wright*, 497 U.S. at 819, 110 S.Ct. 3139 (1990). The majority in *Wright*, limited the inquiry to, "only those [circumstances] that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* This holding limits the inquiry to the circumstances surrounding the making of the confession and does not allow the statement to be corroborated by other external testimonial or physical evidence. However, the trial judge's error points out the imprudence in our limited interpretation of the "totality of the circumstances." I agree with the proposition stated by the dissenters in *Wright*, "It is a matter of common sense for most people that one of the best ways to determine whether what someone says is trustworthy is to see if it is corroborated by other evidence." 497 U.S. at 828, 110 S.Ct. 3139 (Kennedy, J., dissenting). However, given the current restrictive interpretation of the totality of the circumstances, in this case, I fail to see what other steps the State could have taken to ensure the statement's veracity.

{36} In the final analysis, I believe that the majority's exclusion of Magana's statement could be interpreted as foreclosing the use of Rule 11–804(B)(5) to admit hearsay evidence obtained by police from individuals in police custody. By deciding that Magana's statement lacks candor in the face of such sparse facts to support such an inference, I am afraid that there are very few statements given to law enforcement that will be able to withstand the difficult burden that the majority's "lack of candor" analysis creates. I agree with the finding of the trial judge,

> [T]his is precisely the circumstance under which the catch-all exception is meant for. It would be a miscarriage of justice for Mr. Magana to be able to manipulate the rules of evidence to avoid the presentation of this evidence to the jury.

Magana had information relevant to the prosecution of a brutal homicide, and given his refusal to testify in the face of two contempt orders, the State properly proffered his recorded statement under Rule 11–804(B)(5) and I believe the trial court properly admitted the statement.

{37} For the foregoing reasons, I respectfully disagree with the majority's analysis with regard to Magana's statement.

FRANCHINI, Justice (Dissenting).

{38} I agree with the majority that Magana's statement and the refusal to give the self-defense instruction would have been harmless if Magana had been the only witness and had presented no evidence of self-defense. However, there were four other witnesses–Johnson, Arguello, Jimenez, and Gutierrez—who did provide such evidence in this case. Magana was the only one who offered no self-defense evidence. In my opinion, the admission of Magana's taped statement into evidence taken together with the refusal to give the self-defense instruction compounded the error and was clearly harmful which requires a new trial. As the majority states, "[a]n instruction on a claim of self-defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim." *Duarte*, 121 N.M. at 556, 915 P.2d at 312. "[W]here self-defense is involved in a criminal case and there is any evidence, although slight, to establish [such defense], it is not only proper for the court, but its duty as well, to instruct the jury fully and clearly on all phases of the law on [that] issue . . . ." *Heisler*, 58 N.M. at 455, 272 P.2d at 666.

{39} The majority holding otherwise, I respectfully dissent.