This memorandum opinion was not selected for publication in the New Mexico Reports.  Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions.  Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                                                   **NO.   28,816**

**ROBERT SHARP**,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth Martinez, District Judge**

Gary K. King, Attorney General
Nicole Beder, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Karl Erich Martell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ROBLES, Judge.**

Robert Sharp (Defendant) appeals his conviction for three counts of criminal sexual penetration in the first degree, contrary to NMSA 1978, Section 30-9-11(C)(1) (2003) (as amended through 2009); five counts of criminal sexual contact of a minor in the second degree, contrary to NMSA 1978, Section 30-9-13(A) (2003);one count of criminal sexual contact of a minor in the third degree, contrary to NMSA 1978, Section 30-9-13(C) (1987) (as amended through 2003); one count of bribery, contrary to NMSA 1978, Section 30-24-3(A)(3) (1997); and one count of contributing to the delinquency of a minor, contrary to NMSA 1978, Section 30-6-3 (1990). Defendant assigns four claims of error that he avers should result in the reversal of his conviction and a remand for a new trial. Defendant specifically alleges that (1) the district court erred in suppressing evidence relating to allegations of the molestation of other children; (2) the district court erred in allowing the amendment of the indictment during trial; (3) the district court erred in allowing expert testimony despite the expert's late availability for pretrial interview; and (4) cumulative error in the trial ultimately resulted in depravation of due process rights. We affirm.

## I.    BACKGROUND

At Defendant's trial, the following facts were developed. In November 2004, Faye and her daughter, A.M., moved in with Faye's other daughter, Renae. At the time, A.M. was eight years old, and Renae was thirty years old. Also living in the

2

apartment was Renae's child, E.J., who was seven years old at the time. Renae's boyfriend, Defendant, was not the father of E.J., but was the father of Renae's child, P.J., who was born shortly thereafter on March 15, 2005.

After living in the apartment for two months, Faye and A.M. moved to other accommodations in Albuquerque. On May 8, 2005, Faye and A.M. left Albuquerque for Arizona and, within the few days that followed, A.M. revealed to her mother that Defendant had sexually abused her. Upon learning this, Faye took A.M. to Dr. Virginia Rutz. Further facts will be developed as needed.

## II.    DISCUSSION

Defendant asserts that errors resulted in an unjust conviction and, accordingly, encourages this Court to reverse his conviction and remand his case for a new trial. We review each of his claims in turn.

## A.    Preclusion of Testimony

Before the trial, the State filed motions in limine to preclude evidence from being introduced that A.M. had reported to Dr. Rutz that Defendant had also molested E.J. and P.J. At the hearing on the motion, Defendant proffered that A.M. told Dr. Rutz that the other two children had been molested by Defendant which, in turn, led to an investigation by the Children, Youth and Families Department (CYFD). CYFD concluded that the allegations of sexual abuse were unsubstantiated with regard to E.J.

and P.J., but substantiated as to A.M. Defendant stated that he wished to call a CYFD case worker to establish that the allegations of abuse as to the other two children were unsubstantiated. Further, the defense intended to cross-examine Dr. Rutz during the trial about A.M.'s statements regarding the abuse of the other children and intended to cross-examine A.M. about the allegations.

The State, for its part, argued that CYFD's conclusion regarding the allegations concerning the other two children simply meant that there was not enough evidence to substantiate the claims. The State noted that CYFD's conclusions regarding whether an allegation of abuse is "substantiated" or "unsubstantiated" is not the same legal standard as applied in a court of law. Moreover, evidence of CYFD's conclusions that followed its investigation would also be a comment on the credibility of witnesses, would invade the province of the jury, and should be excluded under Rule 11-403 NMRA because the evidence would be misleading and would "require a trial within a trial to determine the reason the CYFD investigator substantiated some allegations and unsubstantiated other allegations." Finally, the State noted that information regarding the other two children was not relevant to whether A.M. had been abused, and such testimony would open the door to examining why CYFD's conclusions as to A.M.'s abuse were substantiated.

The district court, after reviewing the CYFD reports, concluded that the allegations concerning the other two children were "false issues" because the jury was charged only with determining whether Defendant committed the alleged offenses in the indictment. The other allegations were not probative to the allegations in front of the jury, were not "relevant to the problem" concerning the abuse of A.M., and would create a "trial within a trial" that would "confuse the jury or deflect them from proper inquiry." The district court granted the State's motion in limine and ordered counsel to "not make mention of this either in questionings or statements before the jury and advise your witnesses not to make mention of an allegation that [A.M.] had indicated that [E.J.] and [P.J.] were all also victims of [D]efendant's conduct." At a bench conference during the trial, while A.M. was being cross-examined, Defendant again indicated that he wished to question A.M. regarding her allegations of the other two children's abuse. Specifically, Defendant clarified "for the record" that he wished to ask whether A.M. had ever witnessed Defendant touch the other two children inappropriately. Again, the district court effectively held that such issues were not relevant to the proceedings and would open the door to CYFD's findings.

On this issue as framed before the district court, we conclude that the court did not abuse its discretion in excluding the evidence. The admission of such evidence would be an invasion in the province of the jury to determine the credibility of

5

witnesses.  *See State v. Duran*, 2006-NMSC-035, ¶ 21, 140 N.M. 94, 140 P.3d 515 ("[C]redibility of witnesses is to be determined by the jury, not by the witnesses."); *see also* Rule 11-608(B) NMRA ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness . . . may not be proved by extrinsic evidence.  They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination.").  In addition, CYFD's investigation pertaining to other alleged victims was a collateral matter that the district court had wide discretion to admit or exclude.  *State v. Montoya*, 95 N.M. 433, 437, 622 P.2d 1053, 1057 (Ct. App. 1981) ("[O]pinion as to the victim's character, offered to prove conduct in conformity with character, went to a collateral matter [that] is within the trial court's discretionary control.").

In his brief-in-chief, Defendant now makes the claim that the district court's decision to exclude evidence regarding allegations of the other two children's abuse violated his confrontation clause rights.  Defendant avers this issue was preserved "through the State's motion in limine and argument thereon," and the district court should have been alerted to the claimed error by virtue of the fact that the evidence in question was the focus of "extensive discussions."  Defendant circuitously concedes that this issue was not specifically raised below.  *See Kilgore v. Fuji Heavy Indus.*

6

*Ltd.*, 2009-NMCA-078, ¶ 50, 146 N.M. 698, 213 P.3d 1127 ("The primary purposes for the preservation rule are[] (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue."); *State v. Martinez*, 2007-NMSC-025, ¶ 25, 141 N.M. 713, 160 P.3d 894 (stating that "merely mentioning 'due process' was not sufficient to alert the judge to a Confrontation Clause claim and did not fairly invoke a ruling"); *cf. State v. Lopez*, 2000-NMSC-003, ¶¶ 11-13, 128 N.M. 410, 993 P.2d 727 (filed 1999) (holding that where a defendant objected to the admission of a recording of a witness's statement because of the "inability to cross[-]examine or confront the witness," the defendant's objection based on the confrontation clause was adequately preserved). We conclude that this issue was not preserved for appellate review. In anticipation of such a conclusion, Defendant argues, in the alternative, that this Court should review for fundamental error. *See State v. Dietrich*, 2009-NMCA-031, ¶ 51, 145 N.M. 733, 204 P.3d 748, *cert. denied*, 2009-NMCERT-002, 145 N.M. 704, 204 P.3d 29. Generally, "we review a trial court's admission of evidence under an exception to the hearsay rule only for an abuse of discretion." *State v. Torres*, 1998-NMSC-052, ¶ 15, 126 N.M. 477, 971 P.2d 1267,

*overruled on other grounds by State v. Alvarez-Lopez*, 2004-NMSC-030, 136 N.M. 309, 98 P.3d 699. Likewise, we "review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *See Sarracino*, 1998-NMSC-022, ¶ 20. "When a defendant alerts the trial court to a confrontation issue with a proper objection, he or she raises a question of law" that, upon appeal, requires a de novo standard of review. *Lopez*, 2000-NMSC-003, ¶ 10. However, after concluding the issue was not preserved, this Court will not reverse absent a showing of fundamental error. Fundamental error includes both "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused." *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633. The record before us does not suggest Defendant's "indisputable innocence," so we, therefore, review with an eye toward whether a mistake in the process made his conviction fundamentally unfair. *Id.* ¶ 14.

"The Confrontation Clause of the Sixth Amendment is made applicable to the states through the Fourteenth Amendment." *Lopez*, 2000-NMSC-003, ¶ 14 (citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965)). A primary interest afforded by the confrontation clause is the right of cross-examination. *See Dietrich*, 2009-NMCA-031, ¶ 50. Confrontation clause issues should be examined on a

case-by-case basis, taking into account a defendant's right to cross-examine, as well as the risk factors associated with admission of the evidence. *See State v. Stephen F.*, 2008-NMSC-037, ¶ 6, 144 N.M. 360, 188 P.3d 84. In weighing whether evidence must be admitted under the confrontation clause, the district court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *See State v. Smith*, 2001-NMSC-004, ¶ 19, 130 N.M. 117, 19 P.3d 254. The district court holds broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Id.*

New Mexico courts have previously recognized that a defendant's right to cross-examine and confront adverse witnesses is not absolute and must "accommodate other legitimate interests in the criminal trial process." *Stephen F.*, 2008-NMSC-037, ¶ 6 (internal quotation marks and citation omitted). "However, a court's decision to restrict a defendant's ability to confront a witness, even when based on legitimate state interests, calls into question the ultimate integrity of the fact-finding process and requires that the competing interest be closely examined." *Id.* (internal quotation marks and citation omitted).

In the instant case, we acknowledge that Defendant sought to demonstrate to the jury that the claims made by A.M. concerning the other two children could not be

substantiated by CYFD's investigation. The purpose was undoubtedly to attack her credibility and lead the jury to question the veracity of all of A.M.'s allegations. We note, however, that the district court was correct in observing that CYFD merely concluded that the allegations concerning E.J. and P.J. were unsubstantiated, which does not mean that they were or were not abused. Upon review, we determine that it is not an unreasonable position for the district court to conclude that delving into such issues would confuse the jury and would not be probative or relevant as to the issue of A.M.'s abuse. *See State v. Scott*, 113 N.M. 525, 530, 828 P.2d 958, 963 (Ct. App. 1991) (concluding that, in the context of rape shield laws, "the trial court is afforded discretion on the question of whether to admit or exclude evidence of the victim's prior allegations of rape"); *Stephen F.*, 2008-NMSC-037, ¶ 6 (noting that when a state law or rule of evidence conflicts with an accused's right of confrontation, the rule or law should not be applied "mechanistically," but the accused's right to confront and cross-examine "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process" (internal quotation marks and citation omitted)). We therefore conclude that, on balance, no error occurred in this particular case.

**B.     Amendment of the Indictment**

The indictment charged that the alleged offenses happened sometime over a forty-five day period between April 1 and May 15, 2005. At the close of the State's case-in-chief, but before the defense's case, the State moved to amend the indictment to conform with the evidence presented at trial. Specifically, the State sought to enlarge the charging period pursuant to Rule 5-204(C) NMRA, to include November 28, 2004—the date that Faye and A.M. moved to Albuquerque and into Renae's home—up to and including May 15, 2005. After hearing argument, the district court allowed the amendment. The district court noted that Defendant was not relying on an alibi defense and ruled that he was not prejudiced by the amendment.

"[A] court may at any time allow the indictment or information to be amended in respect to any variance to conform to the evidence." Rule 5-204(C). "A variance is not fatal unless the accused cannot reasonably anticipate from the indictment what the nature of the proof against him will be." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070 (filed 1997). A.M. testified that the four incidents took place at some time between when she moved into Renae's house and when she left Albuquerque, although the general nature of her testimony tended to show that she was not exactly sure of when the incidents occurred. Faye testified that (1) Defendant and Renae were dating while A.M. was living in the house, (2) Defendant would come by periodically, and (3) she was not sure if Defendant would spend the night. She

likewise testified that she was not sure who took A.M. and E.J. to school, but she thought there were times when Defendant would pick the children up and take them home. Finally, Faye stated that after she and A.M. had moved out, there were instances where A.M. would visit and spend the night. Defendant, for his part, testified that during the period that Faye and A.M. were living in Renae's house, he visited the house one time. Further, he stated that after A.M. had moved out, he started coming by more regularly. Likewise, Renae testified that Defendant (1) had an apartment in Corrales, New Mexico; (2) came by one time while Faye and A.M. were living there; and (3) started staying there after Faye and A.M. moved out. Finally, Renae testified that A.M. visited Renae's house two times with Faye after A.M. and Faye had moved out.

Defendant's defense rested on his assertion that he did not abuse A.M., and he lacked the opportunity to commit the offenses. This argument does not amount to a claim that Defendant was not on notice as to the nature of the charges against him, or that his defense was compromised by the amendment.

> No variance between those allegations of a complaint, indictment, information or any supplemental pleading which state the particulars of the offense, whether amended or not, and the evidence offered in support thereof shall be grounds for the acquittal of the defendant unless such variance prejudices substantial rights of the defendant.

*State v. Dombos*, 2008-NMCA-035, ¶ 25, 143 N.M. 668, 180 P.3d 675 (internal quotation marks and citation omitted). Defendant knew who the alleged victim of his conduct was, and he was aware of the charges against him. *See Marquez*, 1998-NMCA-010, ¶ 21 (holding that where the defendant was aware of the charges, the identity of the victim, and was not relying on an alibi, the defendant suffered no prejudice in the amending of the indictment).

Defendant next claims that the amendment violated the rule of *State v. Baldonado*, 1998-NMCA-040, 124 N.M. 745, 955 P.2d 214. In *Baldonado*, the defendant was charged with criminal sexual contact of a minor. *Id.* ¶ 3. The indictment stated that the crimes occurred during a two-year period. *Id.* ¶ 4. The defendant filed a motion for bill of particulars, requesting more specificity for the approximate time that the alleged criminal acts occurred. *Id.* This Court noted that the defendant may or may not have had an alibi depending on the time of the alleged offense. *Id*. ¶¶ 5-6. We concluded that no per se rule based on the time of the charging period should be adopted, but instead district courts should look at each situation on a case-by-case basis and conduct their analysis in light of nine, mutually exclusive factors. *Id.* ¶¶ 23, 26-28, 30. However, we also stated that the analysis depended upon "the nature of the challenge asserted by the defendant," implying that the district court's factual development of the issue should be responsive to the

defendant's challenge. *Id.* ¶ 28. The instant case is distinct from *Baldonado*. There, the issue concerned a charging period that lacked specificity and created difficulties for the defense to establish whether an alibi defense existed. In contrast, the immediate case concerns the expansion of a charging period in light of the evidence presented within the context of the defense being on notice as to the specific charges pending. Additionally, Defendant's brief lacks development as to how the district court's ruling "violated the rule of . . . *Baldonado*" and, accordingly, without a visible error, we address the issue no further.

**C.    The District Court's Expert Testimony Evidentiary Ruling**

On the first day of the trial, Defendant argued that Dr. Ornelas had only been made available for an interview the Friday before and requested that her testimony be excluded. The State chronicled its efforts to schedule multiple parties for pretrial interviews and argued that Defendant was only available to conduct the pretrial interview a week before. Additionally, Defendant argued that Rule 11-403 NMRA should preclude the testimony of Dr. Ornelas because it would "bolster[] the testimony of [A.M.]." The district court ruled that there was no discovery violation, and Dr. Ornelas could provide opinion testimony. On appeal, Defendant acknowledges the admission of evidence is within the purview of the district court's discretion. *See State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526. However,

14

Defendant's brief-in-chief states that "[Defendant] maintains the trial court abused its discretion . . . and that a retrial is required." This argument too lacks further development, and we are unable to determine what Defendant's claim of error is other than the general complaint that Dr. Ornelas should not have testified. Without more development, we are simply unable to address this issue.

**D.    Cumulative Error**

Defendant argues that the net effect of the errors in this case warrants reversal of his conviction. Cumulative error requires reversal when the errors that occurred during the trial were "so prejudicial that the defendant was deprived of a fair trial." *State v. Baca*, 120 N.M. 383, 392, 902 P.2d 65, 74 (1995) (internal quotation marks and citation omitted). "This doctrine is to be strictly applied[.]" *State v. Woodward*, 121 N.M. 1, 12, 908 P.2d 231, 242 (1995). However, "[t]he cumulative error doctrine has no application if no errors were committed and if defendant received a fair trial." *Scott*, 113 N.M. at 530-31, 828 P.2d at 963-64. Because we have concluded that there was no error, there is no basis for Defendant to claim that cumulative error requires reversal. *Id.*

**III.    CONCLUSION**

For the reasons discussed above, we affirm Defendant's convictions.

**IT IS SO ORDERED.**

15

                                            _____

**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**