This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39626**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**GINGER WILLS,**

Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Felicia Blea-Rivera, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BACA, Judge.**

**{1}** Ginger Wills (Defendant) was convicted at a bench trial in the metropolitan court of driving while under the influence of intoxicating liquor/drugs (DWI), first offense, contrary to NMSA 1978, Section 66-8-102(B) (2016); and driving on roadways laned for traffic, contrary to NMSA 1978, Section 66-7-317 (1978). Defendant appeals her convictions to this Court, arguing that (1) admission of the results of an analysis of her blood performed by the Scientific Laboratory Division (SLD) violated the Confrontation

Clause of the Sixth Amendment of the United States Constitution; (2) the trial court erred in allowing the State to amend the charge from a DWI-alcohol theory to a DWI-drug theory; (3) there was insufficient evidence to convict Defendant of DWI; and (4) the remote bench trial violated her right to an in-person trial. Unpersuaded, we affirm.

## BACKGROUND

{2}    Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of the case, we omit a background section but we reserve discussion of facts relevant to Defendant's appeal where appropriate in our analysis.

## DISCUSSION

### I.    Admission of the State's Expert Testimony, Opinion, and Toxicology Report

{3}    Defendant argues that her right to confrontation was violated when the metropolitan court admitted the toxicology report through the testimony of the State's expert, Ms. Protiti Sarker, who "did not personally handle [Defendant's] blood sample or conduct the [gas chromatograph mass spectrometer (GCMS)] testing." The State responds that the "Confrontation Clause was not implicated and therefore not violated" because the blood test results testified to by Ms. Sarker did not "relay[] out-of-court testimonial hearsay to the fact[-]finder." Additionally, the State argues on appeal that a technical Confrontation Clause challenge was not properly preserved. Thus, to reach the Confrontation Clause issue, we consider whether this issue was preserved for our review and, as we explain, conclude that it was properly preserved.

### A.    Preservation

{4}    The State argues that Defendant failed to preserve the particular Confrontation Clause argument on whether *State v. Huettl*, 2013-NMCA-038, 305 P.3d 956, applies to GCMS testing.

{5}    First, we point out that Rule 12-321(A) NMRA states that "[t]o preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked." *See State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (stating that "[i]n order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." (internal quotation marks and citation omitted))

{6}    Defendant objected to the admission of the toxicology report on Confrontation Clause grounds and argued that "this evidence . . . is testimonial and subject to the Confrontation Clause." Furthermore, there was briefing on the issue of confrontation and the metropolitan court formally ruled on the issue. Thus, Defendant invoked a ruling from the trial court on the Confrontation Clause as it relates to the admissibility of Defendant's blood test results. *See State v. Lopez*, 2000-NMSC-003, ¶ 11, 128 N.M.

410, 993 P.2d 727 (holding that objection on the grounds of "inability to cross[-]examine or confront the witness" was adequate to raise Confrontation Clause claims even though the defendant did not mention the Sixth Amendment); *see also State v. Moncayo*, 2012-NMCA-066, ¶ 6, 284 P.3d 423 (holding that the district court was properly alerted to the defendant's argument because "both the [s]tate and [the d]efendant engaged in arguments regarding the consequences of admitting the report under the Confrontation Clause").

**{7}**     Therefore, Defendant's Confrontation Clause argument is preserved for our review.

**B.      Admission of the Toxicology Report and the State's Expert's Testimony and Opinion Concerning the Results of Defendant's Blood Test Do Not Violate Defendant's Right to Confrontation**

**{8}**     The Confrontation Clause of both the United States and New Mexico constitutions provide that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amends. VI; N.M. Const. art. II, § 14 (same). The Confrontation Clause applies to witnesses against the accused who provide testimony to establish or prove some fact. *See State v. Tollardo*, 2012-NMSC-008, ¶ 15, 275 P.3d 110. Claimed violations of the right to confrontation are reviewed de novo. *Id.*

**{9}**     A defendant's right to confrontation is violated when an out-of-court statement that is testimonial is introduced against the accused at trial "'unless the witness who made the statement is unavailable, and the accused has had a prior opportunity to confront that witness.'" *State v. Dorais*, 2016-NMCA-049, ¶ 26, 370 P.3d 771 (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 657 (2011)).

**{10}**     Regarding expert witness testimony, this Court has held that the Confrontation Clause is not offended when "an expert who has analyzed the raw data generated by another analyst and who has formed independent conclusions based upon that analysis . . . testif[ies] as to those conclusions." *Huettl*, 2013-NMCA-038, ¶ 36; *see State v. Navarette*, 2013-NMSC-003, ¶ 22, 294 P.3d 435 ("[A]n expert witness may express an independent opinion regarding his or her interpretation of raw data without offending the Confrontation Clause."). Expert testimony violates the Confrontation Clause when the opinion of the testifying expert "is based solely upon a non-testifying analyst's analysis and conclusions." *Huettl*, 2013-NMCA-038, ¶ 37. In those instances, "the expert will have failed to form an independent opinion and is merely acting as a conduit for the presentation of a non-testifying witness's testimonial hearsay." *Id.* ¶¶ 37-38.

**{11}**     Preliminarily, Defendant invites this Court to reconsider our Confrontation Clause analysis based on the complexity of GCMS testing. Defendant argues that, because GCMS testing is complex, the data cannot be considered "raw," therefore, *Huettl* cannot control the instant case. We see no reason to make admission of blood or other testing dependent on the complexity of the testing method employed. In reaching this

conclusion, we observe that Defendant has not referred us to any authority or any jurisdiction which supports this proposition and which has implemented such a requirement. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 ("[A]ppellate courts will not consider an issue if no authority is cited in support of the issue and that, given no cited authority, we assume no such authority exists.").

**{12}** Next, we turn to the admission of the testimony of the State's expert witness and toxicology report in this case. Our review of the record reveals that the State's expert, Ms. Sarker, reviewed the raw data, reached her own independent opinion and conclusions concerning the blood test results of Defendant's blood, and prepared and signed the toxicology report issued by SLD, which was admitted as State's Exhibit 4 at Defendant's trial. *See Huettl*, 2013-NMCA-038, ¶¶ 35-37. Consequently, we hold that the admission of Ms. Sarker's testimony concerning the results of Defendant's blood test was not error. We, likewise, hold that the admission of the toxicology report containing the results of Defendant's blood test was not error. We begin with *Huettl*.

**{13}** In *Huettl*, "no inculpating report of the testing process or conclusions of non-testifying analyst were offered or admitted into evidence." *Id.* ¶ 29. The defendant in *Huettl* argued that the State's failure to call the analyst who placed the seized substance in the spectrophotometer machine for testing violated his right to confrontation. *Id.* ¶ 1. However, the data from the missing analyst was not independently offered or admitted into evidence and "even had it been admitted, there would be no confrontation concern because the spectrophotometer-generated graph was not a testimonial statement that would give rise to a confrontation right." *Id.* ¶ 26. Furthermore, because the State "did not seek to admit, any formal statements or declarations as to [the analyst's] testing process or as to her conclusions" the Confrontation Clause was not implicated. *See id.* ¶ 28. Most importantly, for our purposes here, this Court held in *Huettl* that the Confrontation Clause is not offended when "an expert who has analyzed the raw data generated by another analyst and who has formed independent conclusions based upon that analysis . . . testif[ies] as to those conclusions." *Id.* ¶ 36

**{14}** Such is the case here. The State did not call the analyst who tested the blood. Instead, the State called Ms. Sarker, an expert witness who was the staff manager of the SLD toxicology bureau, confirmation section. Ms. Sarker testified that, while she did not handle the blood in the laboratory, she reviewed the raw data generated by the GCMS and came to an independent opinion about the results. Ms. Sarker further testified that there are two components to her review, a technical and administrative review. There are multiple steps where quality control occurs, including accuracy-ensuring control samples to test the machine's performance. Following the technical and administrative review to verify compliance with quality control and assurance requirements, as well as her review of the raw data, and the formation of her independent conclusions of the results of the blood test, she prepared and signed the SLD report containing the results of the testing to which Defendant's blood was subjected.

**{15}** Consequently, we conclude that Ms. Sarker's testimony did not merely parrot the conclusions from a non-testifying analyst and the SLD toxicology report but provided her own conclusions based on her review of the underlying raw data produced by the GCMS. *See id.* ¶¶ 35-37 (observing that expert testimony based on raw data generated by another is permissible so long as the expert testifies to their own independently derived opinion). Similarly, we cannot conclude that Ms. Sarker was a substitute or surrogate witness because of the independent conclusions she reached and to which she testified. *See State v. Gonzales*, 2012-NMCA-034, ¶ 12, 274 P.3d 151 (stating that *Bullcoming* concluded "the introduction of testimony through a substitute or surrogate witness attesting to [an] original analyst's report violate[s] the defendant's right to confrontation"); *see also Huettl*, ¶ 34 (explaining that where an expert "testifies to [their] independent judgment, derived from an independent evaluation of [the] evidence, there will typically be no confrontation problem because the expert's opinion will be an original product that can be tested through cross-examination" (internal quotation marks and citation omitted)). Thus, we conclude that Ms. Sarker's testimony did not violate the Confrontation Clause and we affirm the metropolitan court's decision to allow this testimony. We now turn to the admission of the toxicology report, State's Exhibit 4.

**{16}** Again, Defendant argues that the admission of the toxicology report violated her right to confront the witnesses against her. Her arguments as to the admission of the report are the same arguments upon which she relies to challenge the admission of the State's expert witness testimony and opinion. Consequently, for the reasons we concluded that the admission of the State's expert witness testimony and opinion did not violate Defendant's confrontation rights, and because Ms. Sarker prepared and signed the toxicology report as the "reviewer," we hold that the admission of the toxicology report was not error and did not violate Defendant's confrontation rights.

## II. Amendment of the DWI Charge

**{17}** Defendant next argues that allowing the State to amend the DWI charge from an alcohol theory to a drug theory resulted in a new charge. Defendant specifically argues that these two charges require proof of different substances, therefore, allowing the State to amend these charges violates Defendant's due process rights.

**{18}** We review a trial court's application of Rule 7-303 NMRA de novo. *See State v. Roman*, 1998-NMCA-132, ¶ 8, 125 N.M. 688, 964 P.2d 852 (reviewing the district court's interpretation and application of a rule of criminal procedure de novo). Rule 7-303(A) states in relevant part that, "the [metropolitan] court may at any time prior to a verdict cause the complaint or citation to be amended with respect to any such defect, error, omission, imperfection or repugnancy *if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.*" (Emphasis added.) Amending is permissible "to conform to evidence introduced in support of the charge made in the information." *Roman*, 1998-NMCA-132, ¶ 11. However, if the amendment raises an "entirely new offense with elements separate and apart from those in the original criminal information," the amendment will have been error. *Id.* ¶ 14. "A variance is not fatal unless the accused cannot reasonably anticipate from the

indictment what the nature of the proof against [them] will be." *State v. Marquez*, 1998-NMCA-010, ¶ 20, 124 N.M. 409, 951 P.2d 1070.

**{19}** Defendant argues that the metropolitan court erred by allowing the State to amend the charges at the directed verdict stage and convict Defendant under the drug-based DWI theory, pursuant to Section 66-8-102(B), when the State only charged her under the impaired to the slightest degree theory, pursuant to Section 66-8-102(A). Defendant contends that the different subsections represent distinct means of committing the crime of DWI and therefore constitute different offenses. Defendant also argues her due process rights were violated as a result of the amendment.

**{20}** Assuming, without deciding, that Defendant is correct that the amendment to the charge of DWI was improper for the reasons she argues, Defendant still cannot prevail because she fails to point to any prejudice resulting from the amendment that would justify reversal. *See State v. Fernandez*, 1994-NMCA-056, ¶ 13, 117 N.M. 673, 875 P.2d 1104 ("In the absence of prejudice, there is no reversible error."); *State v. Fairweather*, 1993-NMSC-065, ¶ 31, 116 N.M. 456, 863 P.2d 1077 ("The mere assertion of prejudice, without more, is insufficient to establish prejudicial error warranting reversal of a conviction."). Here, although the complaint alleged a DWI by alcohol offense, contrary to Section 66-8-102(A), Defendant was on notice that the State would pursue a DWI by drug theory pursuant to Section 66-8-102(B). Defendant was on notice of the DWI-drug theory because (1) at the time of her arrest, following a breath alcohol test which revealed a blood alcohol concentration (BAC) of 0.00, Defendant consented to a blood test due to her admission to the officer that she had taken prescription medications earlier; and (2) the State provided an exhibit list with Defendant's toxicology report, which included the levels of oxycodone in Defendant's blood sample. Because Defendant could have reasonably anticipated a DWI by drug theory before trial she was not prejudiced by the amendment. *See Marquez*, 1998-NMCA-010, ¶ 20.

**{21}** We now turn to Defendant's sufficiency of the evidence argument.

### III. Sufficiency of Evidence

**{22}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Montoya*, 2015-NMSC-010, ¶ 52 (internal quotation marks and citation omitted). "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Galindo*, 2018-NMSC-021, ¶ 12, 415 P.3d 494 (internal quotation marks and citation omitted).

**{23}** Under Section 66-8-102(B), the State had to prove that Defendant was "under the influence of any drug to a degree that renders the person incapable of safely driving a vehicle." To support that Defendant could not safely drive a vehicle, the State relied upon (a) the traffic offense for failure to maintain a lane, (b) Defendant's inability to properly perform field sobriety tests, and (c) Ms. Sarker's expert opinion that Defendant was incapable of safely driving a vehicle based on the toxicology report and police report. We conclude there was substantial evidence to support this conviction.

**{24}** In this case, the evidence and testimony established that Officer Lujan stopped Defendant for failure to maintain a lane. Defendant did poorly on the standard field sobriety tests, exhibiting signs of impairment. On an alternative test, Defendant had to stop and restart the alphabet test, after being reminded of what letter she had to stop, which she subsequently performed properly. After blowing a BAC of 0.00, Defendant admitted to taking prescription oxycodone and consented to a blood draw that revealed oxycodone.

**{25}** Defendant argues that while the State asked Ms. Sarker her expert opinion, the State did not present evidence as to what level of oxycodone would render a person unable to drive safely. However, Ms. Sarker testified on direct examination that oxycodone has a depressant effect on the central nervous system and can slow down the user's brain activity. During cross-examination, Ms. Sarker testified that, even though Defendant had oxycodone levels in the lower therapeutic range, there are still side effects from the drugs. She explained that oxycodone can have side effects which can include impairment such as sedation. During separate questioning by the trial court, who was acting as the fact-finder here, Sarker testified that she concluded that Defendant could not drive safely. Viewed in the light most favorable to the State, we conclude that there was sufficient evidence to support Defendant's conviction for DWI (drug), contrary to Section 66-8-102(B). *See Cunningham*, 2000-NMSC-009, ¶ 26.

## IV. The Remote Bench Trial

**{26}** Finally, Defendant argues that her constitutional right to an in-person bench trial was violated. Under our Supreme Court's COVID-19 emergency order, there must be a compelling need to have an in-person bench trial. The relevant Supreme Court order states,

> All hearings, except for jury trials, shall use telephonic or audio-video connection for court appearances by all attorneys, litigants, and witnesses, unless the judge presiding over the bench trial or other hearing makes oral or written findings of fact and conclusions of law supporting a compelling need for an in-person appearance that are specific to the particular circumstances in an individual case.

*In the Matter of the Safe and Effective Administration of the New Mexico Judiciary During the COVID-19 Public Health Emergency*, No. 20-8500-025, at 11 (N.M. July 6, 2020).[1]

**{27}** Before trial, Defendant filed an objection to trial by video appearance, arguing that Defendant would be disadvantaged due to difficulty seeing documents and facial expressions. Defense counsel also argued that Defendant had an older computer that could not handle a video hearing. The metropolitan court denied Defendant's motion, stating there was no showing of a particularized need for an in-person trial in this case.

**{28}** Defendant urges this court to address the constitutionality of remote proceedings. However, this court is not the proper venue to address this constitutional concern, as a court lower in rank cannot deviate from decisions of a higher court. *See Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778 ("The general rule is that a court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent, irrespective of whether it considers the rule laid down therein as correct or incorrect." (internal quotation marks and citation omitted)); *see also* N.M. Const. art. VI, § 3 (providing that our Supreme Court is granted "superintending control over all inferior courts"). Thus, because in-person trials were suspended by our Supreme Court we decline to address the constitutionality of the Supreme Court Order.

**{29}** Further, the Supreme Court Order does not require the district court to grant a defendant's motion for in-person proceedings where such motion fails to present a compelling need. Defendant's motion did not assert a compelling need for Defendant to appear in person; rather it merely asserted a general constitutional right to appear in person and potential technological issues. Because Defendant fails to establish that her motions were supported by a compelling need, we assign no error to the district court's compliance with the Supreme Court Order. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (explaining that "[t]here is a presumption of correctness in the district court's rulings" and that it is a defendant's "burden on appeal to demonstrate any claimed error below") (alterations, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{30}** For the reasons stated above, we affirm.

**{31} IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

---

[1]https://www.nmcourts.gov/wp-content/uploads/2020/12/Order-No_-20-8500-025-Order-Adopting-PHE-Protocols-for-Safe-and-Effective-Operation-of-NM-Courts-7-6-20-with-PHE-Protocols-Attached-1.pdf.

**KRISTINA BOGARDUS, Judge**

**KATHERINE A. WRAY, Judge**