**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-034**

**Filing Date: February 16, 2012**

**Docket No. 29,763**

**STATE OF NEW MEXICO,**

>        **Plaintiff-Appellant,**

**v.**

**DEBBIE GONZALES,**

>        **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**George P. Eichwald, District Judge**

Gary K. King. Attorney General
Margaret E. McLean, Assistant Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellant

Jacqueline L. Cooper, Chief Public Defender
Santa Fe, NM
Lelia L. Hood, Assistant Appellate Defender
Albuquerque, NM

for Appellee

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**     The State listed Dr. Clarissa Krinsky as an expert witness to testify about the circumstances of the death of Jeff Packer, the victim in this case.  Dr. Krinsky did not perform the autopsy on Packer, and the State explained that it was not going to offer the autopsy report into evidence.  Defendant filed a pre-trial motion to exclude Dr. Krinsky as the State's expert witness arguing that because Dr. Krinsky did not perform the autopsy,

1

allowing her to testify would violate Defendant's Sixth Amendment right to confront a witness against her—in this case the author of the autopsy report itself, who was not going to testify. The district court granted the motion. We hold that based on the record before us, the complete exclusion of the testimony of Dr. Krinsky was error. We reverse and remand with instructions to proceed with a trial to evaluate Dr. Krinsky's status as a witness and her testimony within the boundaries of the Confrontation Clause of the Sixth Amendment and the New Mexico rules of evidence.

## I.    BACKGROUND

**{2}**    This case comes to us on interlocutory appeal. Because a trial has not been held, we rely only on the information set forth in the record and in the August 6, 2009, hearing before the district court on the motion to exclude the witness. Defendant was charged with second degree murder for the stabbing death of Packer. Dr. Timothy Williams, a forensic pathology fellow at the Office of Medical Investigator (OMI), performed the autopsy on Packer. Dr. Williams now lives in the state of Washington, and the State claims it elected not to bring him back to New Mexico to testify as to his autopsy report because of "expense and logistical difficulty." Although the State has represented that it will not seek to introduce the autopsy report itself into evidence, its witness list included Dr. Krinsky, another OMI forensic pathologist. Defendant filed a motion to exclude Dr. Krinsky as a witness, and the district court granted the motion.

## II.    DISCUSSION

### A.    Autopsy Report

**{3}**    We begin by disposing of a preliminary matter—whether the autopsy report should be considered testimonial and therefore subject to the protections of the Sixth Amendment under *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 2531-32 (2009). Although the Supreme Court did not decide the issue of autopsy reports in *Melendez-Diaz*, it observed that "[s]ome forensic analyses, such as autopsies . . . cannot be repeated," and therefore the Confrontation Clause is crucial in such instances to protect a defendant's Sixth Amendment rights. *Id.* at ___ n.5, 129 S. Ct. at 2536 n.5.

**{4}**    Just recently, the Court held that a document "created solely for an evidentiary purpose, . . . made in aid of a police investigation, ranks as testimonial." *Bullcoming v. New Mexico* (*Bullcoming II*), ___ U.S. ___, ___, 131 S. Ct. 2705, 2717 (2011) (internal quotation marks and citation omitted). Some jurisdictions, even in the wake of *Melendez-Diaz*, hold that autopsy reports are in a separate category distinct from other forensic reports and consider them to be non-testimonial. *See* George M. Tsiatis, Note, *Putting* Melendez-Diaz *on Ice: How Autopsy Reports Can Survive the Supreme Court's Confrontation Clause Jurisprudence,* 85 St. John's L. Rev. 355, 381 (2011) (declaring that autopsy reports are "precariously positioned" and worthy of "special consideration"). In *Jaramillo*, we recently decided that an autopsy report submitted into evidence was considered testimonial when

2

done in support of a law enforcement homicide investigation and for use in prosecution of a criminal case. *State v. Jaramillo*, 2012-NMCA-029, ¶¶ 13-14, 272 P.3d 682, *cert. denied*, 2012-NMCERT-002 (No. 33,401, February 16, 2012). In the case before us, the State has represented that it will not seek to introduce the autopsy report. Consequently, we need not decide whether the autopsy report in this case would be testimonial hearsay. Our question is limited to whether Defendant's Confrontation Clause rights under the New Mexico and United States constitutions prohibit Dr. Krinsky from testifying as an expert witness as to the circumstances of Packer's death. After our opinion in *Jaramillo* and the Supreme Court's recent opinion in *State v. Cabezuela*, 2011-NMSC-041, ¶¶ 48-52, 150 N.M. 654, 265 P.3d 705 (discussing the admissibility of testimony from a pathologist who had been present at the autopsy, but had not performed it and relied on records prepared by the other doctor), we conclude that guidelines for the district court's work on this question exist, but that the question was not adequately analyzed with regard to Krinsky's proposed testimony. Our explanation follows.

## B.    Standard of Review

**{5}**    We have two standards of review in this case. "Questions of admissibility under the Confrontation Clause are questions of law, which we review de novo." *State v. Aragon*, 2010-NMSC-008, ¶ 6, 147 N.M. 474, 225 P.3d 1280. Generally, we review admissibility of evidence, including expert opinion, for an abuse of discretion. *See State v. Alberico*, 116 N.M. 156, 169, 861 P.2d 192, 205 (1993).

## C.    Dr. Krinsky's Testimony

**{6}**    In the case before us, the district court relied on the Confrontation Clause and determined that because Dr. Krinsky had not conducted the autopsy of Packer, she could not testify to his manner of death. Both the United States and New Mexico constitutions use the same words to guarantee the right of a criminal defendant at trial "to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; N.M. Const. art. II, § 14. The Sixth Amendment applies to the states through the Fourteenth Amendment. *State v. Lopez*, 2000-NMSC-003, ¶ 14, 128 N.M. 410, 993 P.2d 727. "The Confrontation Clause guarantees the accused in a criminal trial the right to be confronted with the witnesses against him, regardless of how trustworthy the out-of-court statement may appear to be." *State v. Mendez*, 2010-NMSC-044, ¶ 28, 148 N.M. 761, 242 P.3d 328 (internal quotation marks and citation omitted).

**{7}**    The State sought to introduce the testimony of Dr. Krinsky as an expert witness. Under Rule 11-702 NMRA, a witness who qualifies as an expert "by knowledge, skill, experience, training or education" may testify if such "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Rule 11-703 NMRA, which tracks with the Federal Rule of Evidence 703, describes the bases of expert testimony:

3

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, *the facts or data need not be admissible* in evidence in order for the opinion or inference to be admitted.

Rule 11-703 (emphasis added). Rule 11-703 also states that otherwise inadmissible facts or data "shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." "However, the disclosure of this otherwise inadmissible information is to assist the jury in evaluating the expert's opinion, not to prove the substantive truth of the otherwise inadmissible information." *United States v. Pablo*, 625 F.3d 1285, 1292 (10th Cir. 2010). "[W]here an expert witness discloses otherwise inadmissible out-of-court testimonial statements on which she based her opinion, the admission of those testimonial statements under Rule 703 typically will not implicate a defendant's confrontation rights because the statements are not admitted for their substantive truth." *Pablo*, 625 F.3d at 1292.

**{8}** The Confrontation Clause and Rule 703 can be at odds. As the 10th Circuit pointed out in *Pablo*, there is a danger that prosecutors will use surrogate witnesses disguised as experts in order to introduce evidence that otherwise would trigger the Sixth Amendment's Confrontation Clause:

If an expert simply parrots another individual's testimonial hearsay, rather than conveying her independent judgment that only incidentally discloses testimonial hearsay to assist the jury in evaluating her opinion, then the expert is, in effect, disclosing the testimonial hearsay for its substantive truth and she becomes little more than a backdoor conduit for otherwise inadmissible testimonial hearsay.

*Pablo*, 625 F.3d at 1292. The Committee Commentary to Rule 11-703 states that the rule

is intended to strike a balance between an expert's need to rely upon sources of information used in the expert's field in arriving at decisions, but at the same time to avoid using the expert witness as a conduit for inadmissible evidence to be transmitted to the jury and improperly used as substantive evidence.

**{9}** Thus, while there is no argument that under the rules of evidence an expert may rely for his or her opinion on facts and data that themselves are not admissible, the question remains whether the inclusion of underlying facts or data from another source in an expert's testimony in a given circumstance is admissible or violates the constitutional rights of a criminal defendant. To answer this question, we look for guidance from recent United States

4

Supreme Court, New Mexico and Tenth Circuit cases as we analyze this problem.

**1.     United States Supreme Court Cases**

**{10}**     In a series of decisions in the past seven years, the United States Supreme Court has redefined the type of witness statements that trigger the Confrontation Clause rights of criminal defendants under the Sixth Amendment of the United States Constitution. Starting in 2004, the Court abandoned its evidentiary test of reliability and guarantees of trustworthiness when judging whether hearsay testimony is admissible under the Confrontation Clause. *Crawford v. Washington*, 541 U.S. 36, 61-62 (2004). The Court instead distinguished between testimonial and non-testimonial evidence and ruled that the former always triggers the Sixth Amendment right of confrontation. *Crawford*, 541 U.S. at 51. The Court did not define "testimonial" but gave examples:

> *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially, . . . extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions, . . . statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]

*Id.* at 51-52 (second alteration in original) (internal quotation marks and citations omitted). More recently, the Court clarified that certificates of analysis from forensic testing are testimonial statements subject to the Confrontation Clause, thus requiring that the witness be available at trial for cross-examination, because the statements "are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'" *Melendez-Diaz*, ___ U.S. at ___, 129 S. Ct. at 2532 (quoting *Davis v. Washington*, 547 U.S. 813, 830 (2006)). The *Crawford* Court did acknowledge, parenthetically, that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409 (1985) for the proposition that the confession of an accomplice may be admitted for non-hearsay purpose of rebutting the defendant's testimony about his own confession being coerced through the accomplice's statement). One scenario in which testimonial statements are offered for a purpose other than as substantive evidence is when they are used, as we noted above, under Rule 11-703, as underlying facts and data relied on by an expert witness. The United States Supreme Court cautions, though, that "*ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them." *Crawford*, 541 U.S. at 51.

**{11}**     In 2009, the United States Supreme Court built on *Crawford* and stated in *Melendez-Diaz* that the introduction of a drug analyst's certificate of analysis required that the witness

be available for cross-examination by the defendant, otherwise the evidence is inadmissible. *Melendez-Diaz*, 557 U.S. 305, 129 S. Ct. at 2532. While the Court discussed concerns about the potential burden on prosecutions of tracking down unavailable analysts, sometimes years after the original forensic testing was conducted, to testify at trial, it concluded: "The Confrontation Clause . . . is binding, and we may not disregard it at our convenience." *Id.* at ___, 129 S. Ct. at 2540. As the dissent in *Melendez-Diaz* suggested, "The Court made clear in *Davis* that it will not permit the testimonial statement of one witness to enter into evidence through the in-court testimony of a second[.]" *Id.* at ___, 129 S. Ct. at 2546 (Kennedy, J., dissenting). Requiring the original witness to be presented for confrontation by the defendant, the Court declared, "is one means of assuring accurate forensic analysis." *Id.* at ___, 129 S. Ct. at 2536.

{12}   After the appellate briefing in the case before us, the United States Supreme Court decided *Bullcoming II*, ___ U.S. ___, 131 S. Ct. 2705, which overruled the New Mexico Supreme Court's decision, *State v. Bullcoming* (*Bullcoming I*), 2010-NMSC-007, 147 N.M. 487, 226 P.3d 1 (allowing a substitute expert to testify about a chemical report conducted by another analyst). The United States Supreme Court concluded that such "surrogate" testimonial evidence offends the accused's "right . . . to be confronted with the analyst who made the certification[.]" *Bullcoming II*, ___ U.S. at ___, 131 S. Ct. at 2710. Testimonial evidence "may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness." *Id.* at ___, 131 S. Ct. at 2713. The Court stated that the Sixth Amendment "does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination." *Id.* at ___, 131 S. Ct. at 2716. The Court concluded that the introduction of testimony through a substitute or surrogate witness attesting to the original analyst's report violated the defendant's right to confrontation. *See id.* at ___, 131 S. Ct. at 2710.

{13}   The case before us, however, can be distinguished from *Bullcoming II*, because here the original report—the autopsy performed by Dr. Williams—will not be introduced into evidence. Further, Dr. Krinsky's testimony is to be offered through her role as an expert witness, not as a surrogate introducing the report of Dr. Williams. And, according to the proffer of the State, Dr. Krinsky will not parrot the findings of Dr. Williams, but she will instead offer her own opinions and conclusions. In *Bullcoming II*, Justice Sotomayor sided with the majority in barring the surrogate testimony but penned a concurring opinion "to emphasize the limited reach of the Court's opinion," *id.* at ___, 131 S. Ct. at 2719 (Sotomayor, J., concurring), and to "highlight some of the factual circumstances that this case does *not* present." *Id.* at ___, 131 S. Ct. at 2721-22. Justice Sotomayor emphasized that *Bullcoming* was "not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence." *Id.* at ___, 131 S. Ct. at 2722 ("As the Court notes . . . the [s]tate does not assert that Razatos offered an independent, expert opinion about Bullcoming's blood alcohol concentration."). "We would face a different question if asked to determine the

6

constitutionality of allowing an expert witness to discuss others' testimonial statements if the testimonial statements were not themselves admitted as evidence." *Id.* The case before us, therefore, presents a different factual matrix than that in *Bullcoming I*.

## 2.    New Mexico Cases

**{14}**    Our own Supreme Court decided *Aragon* at the same time as *Bullcoming I* and similarly rejected the admission of a forensic report by a second expert when the analyst who had tested the substance was not the one to testify at trial. In *Aragon*, the Court made a point similar to the one Justice Sotomayor would later make in her *Bullcoming II* concurrence:

> The [s]tate's argument would have merit if Young had expressed his own opinion based upon the underlying data that contributed to the opinion announced in the report. It is proper to admit opinion testimony based, *in part*, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession.

2010-NMSC-008, ¶ 23 (internal quotation marks and citation omitted). The Court concluded: "Under such circumstances, [the d]efendant would have had the opportunity to effectively cross-examine Young, and his right to confrontation would not have been violated." *Id.*

**{15}**    Thus, the case before us can be distinguished from *Melendez-Diaz*, *Bullcoming II*, the New Mexico Supreme Court's decision in *Aragon*, and our case *Jaramillo*. In those cases, the report itself was admitted into evidence, and the alternate analyst was used as a witness to introduce the findings of the original, unavailable analyst. Here, the forensic report is not being admitted into evidence but might serve as an underlying document to be used by the expert in giving her own opinion. This is an interlocutory appeal; we do not know what will transpire at trial.

**{16}**    But our analysis does not end here, because *Aragon* cautions that a state's witness does not have carte blanche to give boundless testimony based on hearsay evidence. The controlling question in a case involving an alternative expert witness, our Supreme Court noted, is whether the analyst's testimony "was an expression of his own opinion or whether he was merely parroting" or "merely repeating the contents of [the] report or the opinion of the analyst who is unavailable for cross-examination." 2010-NMSC-008, ¶ 26. *Aragon* pointed to an out-of-state case that held an analyst's testimony was inadmissible even when that testimony was only *partially* based on the non-testifying expert's hearsay opinion. *Id.* ¶ 25 n.4. But, again, our Supreme Court clarified its "concern" about such a situation: "The opposing party has no opportunity to cross-examine the basis for the hearsay opinion because the opinion is not the testifying expert's own opinion. This is especially true when, as is the situation in this case, the testifying expert relies *solely* on the opinion of another expert." *Id.* In other words, the degree to which a substitute analyst parrots the hearsay testimony of another, or in the parlance of *Bullcoming II*, serves as a mere surrogate, controls

7

the analysis.

### 3.      Tenth Circuit Cases

**{17}**      An examination of those boundaries played out in federal court in New Mexico in *United States v. Mirabal*, 2010 WL 3834072 (D.N.M. 2010) (mem. & order), filed in 2010—a year after *Melendez-Diaz*, but a year before *Bullcoming II*.   There, the federal government sought to bring in the testimony of a forensic chemist, Eshelman, who was the supervisor of the analyst, Hall, who had tested the substance in question but was unavailable to testify.  2010 WL 3834072, at *2.  The federal district court for New Mexico in *Mirabal* distinguished the circumstances from those in *Melendez-Diaz* based on the fact that live testimony was available.  *Mirabal*, 2010 WL 3834072, at *4.  The court therefore granted the government's motion to allow the supervising analyst to testify based on her own expert opinions.  *Id.*  In granting the motion, however, the court cautioned the government about the permissible scope of such testimony: "Eshelman's conclusions must be her own, and not a parroting of Hall's opinions."  *Id.*  The court noted that defense counsel

> will be able to cross-examine Eshelman on the issues of "what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed."  *Melendez-Diaz*, [___ U.S. at ___,] 129 S. Ct. at 2537.  She would also be able to cross-examine Eshelman on the fact that Eshelman did not, herself, perform[] the tests and inquire about the possibility that Hall had performed the tests incorrectly.

*Mirabal*, 2010 WL 3834072, at *4.  The court took guidance from *United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009), which worried about prosecutors making "an end run around *Crawford*" and stated:  "As long as [the expert] is applying his training and experience to the sources before him and reaching an independent judgment, there will typically be no *Crawford* problem."  *Id.*

**{18}**      In the wake of *Melendez-Diaz*, the Tenth Circuit has embraced the idea of an analyst testifying as an expert based on another's report that qualifies as an out-of-court testimonial statement.  *Pablo*, 625 F.3d at 1292.  In *Pablo*, the court allowed an analyst, Snider, to give her expert opinion based on DNA reports that she did not help compile but were filed by others, Dick and Boyd:  "Nowhere does Ms. Snider testify that she is simply parroting Ms. Dick's DNA report to the jury.  To the contrary, her testimony revealed her own extensive review of the entire test procedure in this case[,] and she expressed her own expert conclusions."  *Id.* at 1294.  The court upheld the admission of Snider's testimony even though "once or twice" she discussed Dick's conclusions because she did so "in the context of explaining some of the data and information she is relying on in giving her own expert opinion."  *Id.*  The court did concede the precariousness of such a situation:  "The degree to which an expert may merely rely upon, and reference during her in-court expert testimony, the out-of-court testimonial conclusions of another person not called as a witness is a

8

nuanced legal issue without clearly established bright line parameters, even today with the benefit of *Melendez-Diaz*." *Pablo*, 625 F.3d at 1294.

**{19}** The rationale of the Tenth Circuit applies to the situation in this case. Here, the State told the district court that its testifying pathologist, Dr. Krinsky, would not rely on the conclusions or opinions of Dr. Williams and his original autopsy report, but rather on her own review of photographs of the body and other raw data. If Dr. Krinsky offers her own opinions and conclusions as an expert witness and avoids parroting the testimonial statements of Dr. Williams, her testimony would not run afoul of Defendant's Sixth Amendment right to confrontation. At this point, we do not know, because we have only the proffer, not her actual testimony.

### 4.    Other Jurisdictions

**{20}** Cases from other state court jurisdictions reveal a variety of approaches to this question. The Supreme Judicial Court of Massachusetts has allowed experts to testify based on autopsy reports when the original analyst was not available to testify.

> [S]ubstitute medical examiner's opinions must be grounded in the evidence presented at trial, but once that condition is met, he or she may offer opinions on such issues, among others, as whether a particular wound was an entry or exit wound, the amount of time that would have elapsed between injury and death, the amount of force required to inflict an injury, the characteristics of the object probably used to inflict the type of injury observed, and the effect that certain types of injuries would have had on the victim.

*Commonwealth v. Avila*, 912 N.E.2d 1014, 1028 (Mass. 2009). The Illinois Supreme Court has ruled that an expert may testify about data in forensic reports even though the original analyst is not available to testify, to show the basis for the testimony of the expert witness. *See People v. Lovejoy*, 919 N.E.2d 843, 870 (Ill. 2009). In *People v. Williams*, 939 N.E.2d 268, 278 (Ill. 2010), *cert. granted*, *Williams v. Illinois*, ___ U.S. ___, 131 S. Ct. 3090 (U.S. June 28, 2011), the Illinois court stated: "This court has long held that prohibitions against the admission of hearsay do not apply when an expert testifies to underlying facts and data, not admitted into evidence, for the purpose of explaining the basis of his opinion." The Washington Court of Appeals allowed expert testimony of supervisors on an autopsy report not admitted into evidence because the experts "were not acting as mere conduits for the testimonial assertions of their employees." *State v. Lui*, 221 P.3d 948, ¶ 27 (Wash. Ct. App. 2009) ("This is not a case where the [s]tate produced expert witnesses simply to have them recite out-of-court statements made by others as a way to evade the protections of the [C]onfrontation [C]lause."). Other courts permit such expert testimony but closely guard against allowing the expert to disclose testimonial statements based on the underlying autopsy report when the author of the report is not available as a witness. In *Wood v. State*, 299 S.W.3d 200, 211-13 (Tex. Ct. App. 2009), the expert witness relied on photographs to form his own opinion about the nature and causes of the victim's injury, thus steering clear

9

of violating the Confrontation Clause; however, the court held that the expert did later violate the Confrontation Clause when he testified as to the conclusions of the original medical examiner.

{21}    Other courts have found clear violations of defendants' Sixth Amendment rights by expert witnesses.  The North Carolina Court of Appeals found a Confrontation Clause violation based on the following testimony of an expert witness, Schell, who had not performed the forensic examination at issue:

> Q.    Now have you reviewed the testing procedures that you've described and the results of the examinations of the test yourself?
> A.    I have.
> Q.    And have you also reviewed Agent Gregory's conclusion?
> A.    I have.
> Q.    Have you formed an opinion as to the item that was submitted inside the plastic bag that's been marked as State's Exhibit 1B?
> A.    I have.
> Q.    And what is your opinion based on?
> A.    Based upon all the data that she [Agent Gregory] obtained from the analysis of that particular item, State's Exhibit 1B, I would have come to the same conclusion that she did.

*State v. Brewington*, 693 S.E.2d 182, 185 (N.C. Ct. App. 2010).  The court concluded:

> It is clear from the testimony of Special Agent Schell that she had no part in conducting any testing of the substance, nor did she conduct any independent analysis of *the substance*.  She merely reviewed the reported findings of Agent Gregory, and testified that if Agent Gregory followed procedures, and if Agent Gregory did not make any mistakes, and if Agent Gregory did not deliberately falsify or alter the findings, then Special Agent Schell "would have come to the same conclusion that she did."

*Id.* at 190.

{22}    Most recently, the Maryland Court of Appeals warned about allowing an alternate analyst to remark on the conclusions of the non-testifying analyst's DNA report.  In *Derr v. State*, 29 A.3d 533, 557 (Md. 2011), the court concluded that the expert witness "relied on the serological examiner's conclusion that sperm cells were present" and "conceded that she could not form an independent basis for her conclusions without trusting the report."  The court reasoned:  "The key distinction in this type of case is whether the testifying expert relies on raw data in forming his or her conclusions, as opposed to relying on the conclusions and opinions of others when testifying."  *Id.* at 553.

**5.    Analysis**

10

**{23}**     Allowing an expert to testify to an opinion based on the work of a non-testifying, as opposed to an unavailable, witness is a balancing act for courts that must protect the Confrontation Clause rights of the accused while permitting the state to reasonably present expert testimony for the benefit of the factfinder.  Courts must walk that fine line between the Confrontation Clause and the rules of evidence with care.

> If the specific conclusions of the report's non[-]testifying author are not disclosed, and if the testifying expert can also be cross-examined on the fact that he did not personally conduct the tests at issue that undergird his conclusions, permitting reliance upon a report that provides sufficient detail for another expert to exercise independent expertise, assess its conclusions and reach his own judgment appeals to numerous judges as reasonable balance between respecting the Confrontation Clause values and continuing to permit experts to reasonably rely on inadmissible materials, as has long been permitted under Rule 703.

David H. Kaye, David E. Bernstein, Jennifer L. Mnookin, *The New Wigmore:  A Treatise on Evidence—Expert Evidence*, § 4.10.2, at 202-03 (2d ed. 2011); *see O'Kelly v. State*, 94 N.M. 74, 77, 607 P.2d 612, 615 (1980) (stating that experts may rely on facts and data embodied in a non-admissible report but not the oral or written opinions of the non-testifying compiler of that report).  In the case before us, in the absence of a fully formed record, we can say no more at this point other than that allowing an expert to testify based on information in the autopsy report of another analyst, assuming the report itself is not introduced into evidence, is not a *per se* violation of the Confrontation Clause rights of the defendant.  Because the autopsy report is not being admitted into evidence, this case does not trigger the Confrontation Clause violations flagged by the United States Supreme Court in *Melendez-Diaz* or *Bullcoming II* and by our own Supreme Court in *Aragon*.  An expert's testimony may be based on inadmissible evidence, and until such expert testimony crosses the line from the formation of an independent opinion based on underlying raw data to a reliance on the conclusions and opinions of the author of the autopsy or a mere parroting of the report's findings, then that testimony is admissible subject to the rules of evidence.

**{24}**     We extend this discussion in order to provide words of caution to be observed by the district court upon remand as it takes on the responsibility of ensuring that Dr. Krinsky's testimony does not run afoul of Defendant's Confrontation Clause rights.  We do not decide here, for instance, whether under the New Mexico rules of evidence Dr. Krinsky is qualified to serve as an expert witness or whether the underlying facts and data she plans to rely on are a sufficient basis for such expert testimony.  In addition, the district court must closely police the testimony of Dr. Krinsky if she relies in any way on the underlying facts and data contained in the autopsy report prepared by Dr. Williams.  And Defendant will have the opportunity to object to any and all of Dr. Krinsky's testimony, as well as to cross-examine Dr. Krinsky and inquire about her methods and her lack of personal knowledge about the autopsy that was conducted, all subject to the court's discretion.

11

**{25}** Such case-by-case scrutiny by a trial court is essential. The New Mexico Supreme Court recently gave guidance to district courts when they assess testimony that pushes the boundaries of hearsay limitations under the rules of evidence: "Our courts must once again shoulder the heavy responsibility of sifting through statements, piece-by-piece, making individual decisions on each one." *Mendez*, 2010-NMSC-044, ¶ 46. In *Mendez*, the Supreme Court refused to proclaim that all statements made by any victim to a sexual assault nurse examiner (SANE) must be excluded under the rules of hearsay: "It would make our job far easier simply to exclude all statements made during SANE examinations. We would do so, however, at the substantial risk of excluding statements that are otherwise trustworthy, vital to the prosecution, and fair to the accused." *Id.* In the realm of Confrontation Clause analysis, we, too, refuse to extend the holdings of *Crawford*, *Melendez-Diaz*, and *Bullcoming II* and to toss a blanket ban on the testimony of an expert witness about the circumstances of the death of the victim in those instances when the expert did not perform the autopsy and the autopsy report has not been admitted into evidence.

**{26}** In summary, the balance between the extent to which its contents constitute the facts and data upon which Dr. Krinsky bases her opinion, and whether those facts are presented before the jury pursuant to Rule 11-703 requires active monitoring and evaluation by the district court—a process that has not played out here and points to the district court's ruling as being premature under the state of the law. After *Cabezuela*, we know that a pathologist who participated in an autopsy can testify to his or her opinion, including opinions utilizing another participating doctor's notes. Until Dr. Krinsky testifies to her opinions and their bases, no confrontation problem exists. Perhaps, no confrontation problem will arise. Until it does, however, exclusion of her testimony is unwarranted and requires reversal.

## III. CONCLUSION

**{27}** For the foregoing reasons, we conclude that Dr. Krinsky should not have been precluded from testifying as an expert as to the circumstances surrounding the victim's death because she did not prepare the autopsy report. The proffer by the State indicates that she will be testifying as an expert in her own right. Nevertheless, her testimony is not automatically admissible. As Dr. Krinksky presents her testimony at trial, Defendant will be able to make objections. The State will be able to counter, and the district court will make its rulings based on the testimony offered and the objections made.

**{28}** Accordingly, we reverse the order of the district court excluding Dr. Krinsky from being an expert witness and remand this matter to the district court for proceedings consistent with this Opinion.

**{29} IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Judge**


_____

**RODERICK T. KENNEDY, Judge**

**Topic Index for** _State v. Gonzales_**, No. 29,763**

| **AE** | **APPEAL AND ERROR** |
| --- | --- |
| AE-IA | Interlocutory Appeal |
| AE-RM | Remand |
| AR-SR | Standard of Review |

| **CONSTITUTIONAL LAW** | |
| --- | --- |
| CT-CT | Confrontation |
| CT-SU | Suppression of Evidence |

| **EV** | **EVIDENCE** |
| --- | --- |
| EV-AE | Admissibility of Evidence |
| EV-EW | Expert Witness |
| EV-HR | Hearsay Evidence |
| EV-SU | Suppression of Evidence |
| EV-WT | Witnesses |