This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-39870**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VICENTE L. PEREZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**William G. W. Shoobridge, District Judge**

Raúl Torrez, Attorney General
Benjamin L. Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}**     Defendant appeals his conviction for second-degree murder, contrary to NMSA 1978, Section 30-2-1(B) (1994), following a jury trial. He argues that his conviction was not supported by substantial evidence regarding the intent requirement and that his right to confrontation was violated when a pathologist testified based on photos of the autopsy despite not participating in the autopsy itself. We affirm.

**DISCUSSION**

**Sufficiency of the Evidence**

**{2}** A jury determined that Defendant killed his wife (Victim) by shooting her in the mouth with a rifle. The testimony at trial—from several of Victim's children who were present during the shooting—indicated that the killing resulted from an argument related to Defendant's demand that Victim cook him a different breakfast than what Victim served the children. According to the children's testimony, upon arming himself with a rifle, loading it, and pointing it in Victim's face, Defendant declared his intention to shoot or kill Victim. During the argument, Victim pushed the rifle barrel away from her face, the rifle hit a nearby stove, and thereafter discharged. The State presented evidence from a firearms expert who testified that she tested the rifle, struck the buttstock of the rifle against a brick wall over twenty times, and observed the rifle did not misfire. Rather, the rifle worked normally and did not accidentally discharge during the test. Defendant was convicted of second-degree murder, a lesser included offense of the first-degree murder which was charged.

**{3}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{4}** Regarding intent to commit second-degree murder, the jury was instructed in pertinent part: "[T]he [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime: . . . [D]efendant knew that his acts created a strong probability of death or great bodily harm to [Victim.]" As well, our Legislature has described the requisite intent for second-degree murder under Section 30-2-1(B):

> Unless he is acting upon sufficient provocation, upon a sudden quarrel or in the heat of passion, a person who kills another human being without lawful justification or excuse commits murder in the second degree if in performing the acts which cause the death he [or she] knows that such acts create a strong probability of death or great bodily harm to that individual or another.

"Under the statute, a defendant must know that his or her acts create a strong probability of death or great bodily harm." *State v. Suazo*, 2017-NMSC-011, ¶ 16, 390 P.3d 674. "[T]he jury may infer intent from circumstantial evidence; direct evidence of a defendant's state of mind is not required." *State v. Guerra*, 2012-NMSC-027, ¶ 28, 284 P.3d 1076.

**{5}** The jury heard evidence from Victim's children, who were present at the time of the shooting and witnessed Defendant point the rifle at Victim. One child testified that Defendant loaded the weapon before pointing it at Victim. Two children testified that they saw Defendant's finger on the trigger, although both children had previously stated they could not see Defendant's finger when he held the rifle to Victim's head. As stated, the State's firearm expert testified that the rifle functioned normally and was not prone to accidental misfire. A pathologist testified that the presence of soot on the roof of Victim's mouth indicated the gun went off while the barrel was within a few inches of Victim's face.

**{6}** We hold that acquiring, loading, and pointing the rifle at Victim's head at close range while threatening to kill her suffices to establish Defendant's cognitive awareness that his actions created a strong probability of death or great bodily harm. Defendant articulates conflicts in evidence that could indicate an insufficient state of mind, but we resolve such conflicts in favor of the verdict. *See Cunningham*, 2000-NMSC-009, ¶ 26. Testimony indicating that Defendant loaded the gun before pointing it at Victim is particularly relevant to our analysis, a direct indication that Defendant intentionally escalated the risk of great bodily harm. Likewise, testimony indicating that the rifle was unlikely to misfire could give rise to a reasonable inference by the jury that Defendant himself pulled the trigger, despite efforts at trial to impeach the children's testimony regarding the incident. Accordingly, we affirm Defendant's conviction for second-degree murder based on sufficient evidence of Defendant's state of mind at the time of commission.

## Confrontation Clause

**{7}** Defendant challenges the admission of testimony about Victim's autopsy photos from a pathologist who did not perform the autopsy, which Defendant claims violated his right to confrontation. The State answers that the pathologist did not testify to the actual autopsy itself but gave opinions based merely upon the photographs taken during the autopsy and therefore did not bear upon Defendant's right of confrontation.

**{8}** "When a defendant alerts the trial court to a confrontation issue with a proper objection, he or she raises a question of law." *State v. Lopez*, 2000-NMSC-003, ¶ 10, 128 N.M. 410, 993 P.2d 727. "In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the trial court of the nature of the claimed error and invokes an intelligent ruling thereon." *State v. Howl*, 2016-NMCA-084, ¶ 36, 381 P.3d 684 (internal quotation marks and citation omitted). As a preliminary matter at trial, Defendant orally moved to exclude the pathologist's testimony on grounds that it was based on the autopsy report rather than raw data and photographs. Defendant did not renew his objection when the pathologist was called to the stand and testified two days later. As this was not a proper objection, we review the district court's admission of the testimony for fundamental error. *See* Rule 12-321(B)(2)(c) NMRA; *see also State v. Lucero*, 1986-NMCA-085, ¶¶ 9-11, 104 N.M. 587, 725 P.2d 266 (determining general hearsay objections to be to the adequacy of foundation rather than a specific, timely objection to testimony that properly preserved the issue).

**{9}** "Under the Confrontation Clause, U.S. Const. amend. VI, an out-of-court statement that is both testimonial and offered to prove the truth of the matter asserted may not be admitted unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant." *State v. Smith*, 2016-NMSC-007, ¶ 42, 367 P.3d 420 (internal quotation marks and citation omitted). "In *Crawford* [*v. Washington*, 541 U.S. 36 (2004)], the United States Supreme Court described 'testimonial' statements as solemn declarations or affirmations made for the purpose of establishing or proving some fact." *State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435 (alterations, internal quotation marks, and citation omitted). In *Navarette*, our Supreme Court held that one pathologist's subjective observations recorded in an autopsy report may not provide a basis for another pathologist's trial testimony. *Id.* ¶ 1. Rather, a pathologist may testify based on their review of "photographs of the body and other raw data," but may not "rely on the conclusions or opinions of [the performing pathologist and their] original autopsy report." *State v. Gonzales*, 2012-NMCA-034, ¶ 19, 274 P.3d 151; *see Navarette*, 2013-NMSC-003, ¶ 22 (stating that "an expert witness may express an independent opinion regarding his or her interpretation of raw data without offending the Confrontation Clause"). Stated differently, a pathologist may testify to their opinions on an autopsy they did not perform if they offer their own opinions, based on photographs or raw data, as an expert witness and avoid parroting the testimonial statements of the performing pathologist. *See Gonzales*, 2012-NMCA-034, ¶ 19.

**{10}** As articulated by Defendant, we determine there was no error—let alone fundamental error—in this instance regarding the admission of the pathologist's testimony. The pathologist testified she formed her own independent opinion on the case after reviewing the original autopsy report, photographs taken during the autopsy, CT scan results, toxicology report, and the associated police report. The pathologist further testified that Victim's cause of death was an intraoral gunshot wound to the head. The pathologist described how she assessed Victim's fatal wound by reviewing photographs taken during the autopsy and could make conclusions about the proximity of the gun upon its discharge based on the visible presence of soot in a photograph of the Victim's mouth. Many of the autopsy photos were entered into evidence as the basis for the testifying pathologist's opinion, but the performing pathologist's report was not entered into evidence. In any event, Defendant centrally argues that the testifying pathologist's reliance on autopsy photos constituted the violation, a circumstance permissible under both *Navarette* and *Gonzales*. As to Defendant's overall challenge to the testifying pathologist's opinion at trial, our review of the record reveals no improper reliance on the opinion of the performing pathologist or the original autopsy report itself. Without further argument from Defendant, this evidence satisfies the confrontation requirements established by applicable precedent. *See Gonzales*, 2012-NMCA-034, ¶¶ 19, 27; *Navarette*, 2013-NMSC-003, ¶ 22. We, therefore, hold that the district court did not commit fundamental error in allowing this evidence into the record.

**CONCLUSION**

**{11}** For the above reasons, we affirm.

**{12}** IT IS SO ORDERED.

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**GERALD E. BACA, Judge**