This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.                                                                     NO.  30,978

**VICTOR HERNANDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Sante Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

# MEMORANDUM OPINION

**KENNEDY, Chief Judge.**

{1}    Victor Hernandez (Defendant) appeals his two convictions for aggravated battery, asserting that the district court erred in denying him a self-defense instruction, which he argues compelled him to testify in violation of his Fifth Amendment rights, as well as committing various discovery and evidentiary errors. The case arises from a fight outside a bar between Defendant and two victims, Robert Apodaca and Jordan Arellin. Because both parties are familiar with the events in dispute, we will review the relevant facts as they become necessary in discussing the four issues raised on appeal. For the reasons described below, we find no error and affirm the district court.

## I.    DISCUSSION

### A.    The District Court Did Not Erroneously Deny Defendant's Requested Jury Instructions Nor Compel Defendant to Testify in Violation of His Fifth Amendment Rights

{2}    Defendant's first assignment of error is dual in nature. He argues that the district court erroneously denied his request for self-defense instructions at the end of the State's case and, as a result, he was compelled to testify in violation of his Fifth Amendment rights, according to him, to establish sufficient facts to justify giving the instruction later. The motion and ruling that Defendant challenges occurred at the end of the State's evidence, so we address each element in turn based on the evidence

before the court at the time of its ruling. Later, after Defendant testified that he had been "jumped" by multiple assailants and had been in fear of his life, he successfully renewed his request. Prior to deliberating, jurors were instructed as to self-defense. We note that Defendant had not testified to his subjective view of the situation at the time his initial motion was made to give the instruction.

{3} The first half of the question—whether to give the instruction—"is a mixed question of law and fact that we review de novo." *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). An instruction on self-defense requires evidence that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the [defendant's actions] resulted from that fear, and (3) the defendant acted reasonably when he or she [acted]." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted). "A defendant is not entitled to a self-defense instruction unless it is justified by sufficient evidence on every element of self-defense." *Id.*

> The first two requirements, the appearance of immediate danger and actual fear, are subjective in that they focus on the perception of the defendant at the time of the incident. By contrast, the third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant.

*State v. Coffin,* 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477.

**{4}** For a self-defense instruction to be given, the evidence must be sufficient so that reasonable minds could differ on all elements of the offense. *See State v. Gonzales*, 2007-NMSC-059, ¶ 19, 143 N.M. 25, 172 P.3d 162. We note that the test for the facts is a "view [of] the circumstances at the time the deadly force was used by the defendant and not at some earlier point." *Rudolfo*, 2008-NMSC-036, ¶ 18.

**{5}** Looking at the State's evidence of the fight, we are unpersuaded by Defendant's argument that he deserved a self-defense instruction. The testimony in the State's case indicated that, as the group came out of the bar, Defendant and his girlfriend were some distance away. Defendant yelled at the group. Thereafter, Defendant and his girlfriend got in her car and drove toward the group, causing them to move out of the way to avoid being hit. Defendant's girlfriend exited the car and began a fight with a female member of the group. Apodaca approached Defendant, who was still in the car. Defendant threatened to kill Apodaca and then exited the car to confront him. Prior to fighting with Apodaca, Defendant asked another member of the group if he was planning to join in. After receiving a negative answer, the fight with Apodaca began. At some point, Apodaca took Defendant to the ground. Soon after, Apodaca became aware he had been cut deeply in the abdomen and yelled for help. Arellin answered Apodaca's call for help. Arellin also wound up on the ground, kicking at Defendant, who struck Arellin's legs. About this time, the bar's bouncer broke up the fight. Arellin soon discovered that his legs had received a number of deep cuts.

Apodaca's abdomen had been cut badly enough to result in partial evisceration of his intestines. Two witnesses testified that they saw an object in Defendant's bloody right hand as he backed away from the fight.

{6} After the State presented this evidence, Defendant requested a self-defense instruction. Based on what was presented at the time of the request, the evidence showed that Defendant used deadly force and a deadly weapon in his fight against both Apodaca and Arellin. The first part of the fight was one that, to all appearances, was mutually joined by Defendant and Apodaca. Defendant traded threats with Apodaca, got out of the car, ascertained that another man in Apodaca's party would not be joining in the fight and then engaged Apodaca in a fist fight. No evidence compelled an inference that, at the time Defendant joined in combat with Apodaca, he did so out of fear he was in danger of death or great bodily harm. To all appearances, Defendant's response to Apodaca's approach to the car was to threaten to kill Apodaca and get out to fight him. These were not actions that were a reasonable product of a fear of an immediate danger of death or great bodily harm. *State v. Lopez*, 2000-NMSC-003, ¶ 26, 128 N.M. 410, 993 P.2d 727. When Apodaca took Defendant to the ground in a fist fight, Defendant cut him badly enough with a sharp instrument to expose his intestines through about a ten-inch wound. Apodaca possessed no weapon and used none save his fists. We can see no real evidence known to the district court at the time of the request to support the possibility that

Defendant was in reasonable fear of death or great bodily harm at the time he joined or during the fight as required for a self-defense instruction. From the timing and extent of Apodaca's injuries, it is reasonable to assume that Defendant entered the fight armed.

**{7}** In *State v. Guerra*, our Supreme Court held that a defendant who came to the scene of a fight armed and stabbed the unarmed victim repeatedly after their fight began was rightly denied a self-defense instruction because the defendant's actions were not reasonable. 2012-NMSC-014, ¶ 15, 278 P.3d 1031. Our Supreme Court noted that "there was no appearance in [the] case that [the d]efendant was threatened with death or great bodily harm at the time of the killing. Necessarily, if the first element is not present, [the d]efendant could not have killed as a result of that threat." *Id.* Defendant's assertion that he faced multiple assailants also fails because Arellin did not appear until Apodaca had seen the extent of his own injuries and yelled for help. Since Apodaca was out of the fight because of his injuries, Defendant did not fight both at the same time. *See State v. Cooper*, 1999-NMCA-159, ¶ 11, 128 N.M. 428, 993 P.2d 745 (holding that a defendant could receive a self-defense instruction for defending against harm from multiple assailants).

**{8}** Here, the district court denied the self-defense instruction when it was first requested after the State's case, pointing out that (1) Defendant was in the car that menaced Apodaca, Arellin, and their group; (2) Defendant was the first aggressor; and

6

(3) there was evidence that Defendant had retrieved something from the back seat of the car that could be inferred to be a weapon. The district court found that, even if Defendant was taking on more than one person, he did so willingly and, as the first aggressor, the requested instruction was not warranted. We conclude that the district court's actions at that time were correct. Even in a situation where a victim is armed, a self-defense instruction is not warranted in light of a defendant's overwhelmingly vicious reaction to the threat that would indicate conduct fueled by "hatred or by rage or other strong emotion, but not by fear." *Lopez*, 2000-NMSC-003, ¶ 26. Defendant's reaction to the situation presented must be shown to be a reasonable response, which here it was not. Not every element of self-defense was established, and an unreasonable response to a threat precludes a self-defense instruction. *See State v. Swick*, 2012-NMSC-018, ¶ 65, 279 P.3d 747. Due to the fact that Defendant exited the car to fight, the severity of the wounds inflicted by him, the evidence of his use of a weapon against unarmed combatants, and the lack of evidence as to a subjectively fearful state of mind, the district court was reasonable in refraining from giving a self-defense instruction at that point. The evidence at that point in the trial was not sufficient to allow reasonable minds to differ as to the elements of the defense.

{9}     Defendant next contends that the district court's refusal to give the instruction after the close of the State's case unfairly compelled him to testify, thus violating his Fifth Amendment right against self-incrimination. It is clear from the record that, at

7

the time the district court ruled on Defendant's first request to receive a self-defense instruction, it was unaware that Defendant would be testifying, or that the defense would present evidence. Afterwards, the defense counsel made a proffer indicating that, if Defendant were to testify, she believed such testimony would establish that Defendant did not get out of the car to fight Apodaca, but to defend his girlfriend elsewhere. Defense counsel then asserted that, because the court had denied Defendant the self-defense instruction, it forced Defendant to compromise his right to remain silent to "make sure that the jury hears evidence of self-defense; that there were truly two on one[.]"

{10} Following a brief conference with Defendant, his counsel returned and stated that, based on the denial of the instruction, she believed Defendant felt he had no choice but to testify and sought to limit the scope of any cross-examination to no more of the event than Defendant addressed. The district court declined to do anything but rule on objections as they arose. Defendant took the stand and stated that, in response to a query from his counsel, he understood his right not to testify, but "I wanted to let the jury know something." Defendant's testimony on direct was that he was "jumped" by Apodaca and Arrellin, and he "[f]ought for [his] life." The State then proceeded to cross-examine Defendant concerning facts developed in its case-in-chief, after which the defense rested. Subsequent discussions with the district court ultimately resulted in the jury receiving a self-defense instruction.

8

{11}     It is clear that Defendant was aware of his right not to testify, and he chose instead to do so.  His argument is that his choice was the product of an *erroneous* denial of the instruction.  We have already held that the district court's original denial of the instruction was proper.  Defendant has no right to a jury instruction that is insufficiently grounded in the evidence of a case.  *Lopez*, 2000-NMSC-003, ¶ 25 (holding that the defendant is not entitled to a self-defense instruction that is not grounded in sufficient evidence to allow reasonable minds to differ as to the elements of the defense).  As noted in *Coffin*, subjective aspects of the defense were important enough to be necessary for the instruction.  1999-NMSC-038, ¶ 16.  The district court did not erroneously deny the original request for a self-defense instruction, and Defendant clearly understood his decision to testify to attempt to establish the basis for his defense.  We find that his testimony was not compelled in violation of his Fifth Amendment rights.

{12}     Defendant's reliance on *Simmons v. United States*, 390 U.S. 377 (1968), and *State v. Aragon*, 1999-NMCA-060, 127 N.M. 393, 981 P.2d 1211, is misplaced. *Simmons* established the Fifth Amendment privilege to testify to establish standing for Fourth Amendment suppression purposes without the testimony being later used by the State as evidence against the defendant unless the defendant chose to testify once again at trial.  390 U.S. at 390-91.  *Aragon* dealt with a defendant who was forced to choose between two constitutional rights, in the context of whether the defendant was

9

properly denied a continuance due to his attorney's illness and the waiver of his fundamental right to a jury trial in order to move his trial to a later date. 1999-NMCA-060, ¶¶ 1, 3-4. Defendant faced no such choice in this case.

{13} Similarly, we are unpersuaded by Defendant's argument that had the instruction been granted initially, he could have avoided cross-examination. As we stated above, we reject Defendant's claim that self-defense could have been based on inferences contained within the State's evidence. As well, the last question and answer on redirect of Defendant were:

| [DEFENSE COUNSEL]: | Why did I caution you about testifying? |
|---|---|
| [DEFENDANT]: | Because you told me the State would try to turn my words around. |

We conclude that Defendant knowingly and voluntarily took the witness stand to testify in his own defense, was not compelled to do so, and was well aware that, by doing so, his testimony bore the capacity to garner the self-defense instruction that had until then been properly denied.

**B.      The State's Discovery Failures Do Not Warrant Reversal**

{14} Defendant demonstrates that, during the month preceding the trial, both the State and the defense counsel learned of the existence of previously undisclosed

10

evidence, precipitating a scramble for its production.[1] We review a district court's decision with regard to discovery for abuse of discretion. *See State v. McDaniel*, 2004-NMCA-022, ¶ 6, 135 N.M. 84, 84 P.3d 701. In determining whether late disclosure of evidence requires reversal, we consider the following factors: "(1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether non-disclosure of the evidence prejudiced the defendant; and (4) whether the [district] court cured the failure to timely disclose the evidence." *Id.* ¶ 8 (internal quotation marks and citation omitted). On the morning of the trial, Defendant's motion to exclude all of the State's evidence as a result of discovery problems was denied. Much of that argument is muddled on both sides, yet Defendant did not request a continuance of the trial to deal with the evidence that was produced late, and instead chose to proceed to trial. *See State v. Smith*, 1975-NMCA-139, ¶¶ 17-18, 88 N.M. 541, 543 P.2d 834 (declining to address the defendant's argument regarding the district court's error in admitting the state's late-disclosed evidence because, although the defendant objected that the letter had only been provided to the defense the day

---

[1]The fact that plea negotiations broke down three months prior to the trial date does not change our view of the parties' obligations to both provide and seek discovery at all stages of a criminal prosecution. *See* Rule 5-501(A) NMRA (stating generally that prosecution must make available the documents, photographs, and recordings in the case "within ten . . . days after arraignment"). The defense submitted no motions to compel discovery prior to the plea negotiations.

11

before, the defendant did not claim surprise at trial, did not ask for a continuance at trial, and did not ask the court to conduct an inquiry into the state's late disclosure). We address each contested item.

**1.    Arellin's Interview**

{15}    In addition to the CD recording of an interview with Arellin not being disclosed until the morning of the trial, the disc suffered a technical malfunction and was not used by either side during the trial. There were some indications prior to trial that the taped interviews with Apodaca and Arellin had taken place around the time of the incident in May 2009, as reflected in Defendant's specific motion the day of the trial seeking belt tape interviews. On the morning of the trial, the State disclosed the existence of two CD interviews with Apodaca and Arellin taken by one of the detectives, and defense counsel promptly filed a motion regarding the late discovery. Due to the aforementioned technical flaw, Arellin's interview was truncated. The surviving portion only dealt with a photograph array. Despite Defendant's arguments to the contrary, the interviewing officer's testimony indicated that no further statement was successfully recorded. "We review a district court's remedy for lost or destroyed evidence for an abuse of discretion." *State v. Redd*, 2013-NMCA-089, ¶ 18, 308 P.3d 1000, *cert. denied*, 2013-NMCERT-008, 309 P.3d 100. "The good faith of the [s]tate is irrelevant when the evidence lost is material and prejudicial to the accused. But, where the [s]tate shows it did not act in bad faith, the defendant must show materiality

12

and prejudice." *State v. Chouinard*, 1981-NMSC-096, ¶ 24, 96 N.M. 658, 634 P.2d 680.

{16}    Nothing in the record indicates bad faith on the part of the State regarding the faulty recording. Defendant asserts that the unrecorded portion of the statement was material, and he suffered prejudice due to the late disclosure of Arellin's recorded statement due to the loss of relevant factual information and the opportunity to impeach Arellin.

> Determination of materiality and prejudice must be made on a case-by-case basis. The importance of the lost evidence may be affected by the weight of other evidence presented, by the opportunity to cross-examine, by the defendant's use of the loss in presenting the defense, and other considerations. The trial court is in the best position to evaluate these factors.

*Id.* ¶ 25. At trial, the court accepted Defendant's statement that only a short portion of Arellin's statement was viewable. When Defendant later moved for a mistrial after confusion regarding whether the officer reviewed a functioning copy of the taped statement, the court denied the motion, but permitted Defendant to cross-examine the officer, who corrected his testimony to state that the recording malfunctioned and only contained the discussion relating to the photograph array. At no time did the State rely on evidence from the malfunctioning tape. Therefore, there was no prejudice to Defendant, and the court did not err in how it addressed the faulty recording.

**2.    The Videotape**

13

{17} One of the investigating detectives disclosed the existence of a video of the bar parking lot from May 19, 2009, the night of the fight. The tape was requested by the defense investigator on July 15, 2010. Defendant asserts that earlier discovery of the videotape may have given credence to his claim of self-defense by impeaching Apodaca's and Arellin's account of when they left the bar. On the morning of the trial, the defense counsel had not been able to view the video due to technical problems with getting it to play on her laptop. She later cross-examined Officer Robert Swessel regarding the video, who established that it was impossible to tell from the video how soon after Defendant left the bar that Apodaca and Arellin left with their friends. Because Defendant claims he was prejudiced because the video could have shown when the groups left the bar, Swessel's testimony to the contrary undermines his claim of particularized prejudice resulting from any late disclosure. *See State v. Rojo*, 1999-NMSC-001, ¶ 61, 126 N.M. 438, 971 P.2d 829 (refusing to hold that the prosecution's delay in disclosing evidence required reversal in the absence of a showing of prejudice from the non-disclosure); *see also McDaniel*, 2004-NMCA-022, ¶ 6 ("The prejudice must be more than speculative."). Defendant also fails to direct us to any place in the record that shows he was denied being able to view a workable copy of the video, or that he asked for a continuance to procure and evaluate a copy. *See Smith*, 1975-NMCA-139, ¶ 17.

**3.    Medical Records and Photographs of Apodaca's and Arellin's Injuries**

14

**{18}** On June 29, 2010, the defense counsel was informed by the prosecutor of the existence of photographs of Apodaca's and Arellin's injuries. The Albuquerque Police Department (APD) requested a $30 fee before releasing the photographs, among other evidence, to defense counsel. Because the defense counsel represented Defendant based on a contract with the Public Defender's Department, she requested that the fee be waived. The material was turned over to the defense counsel five days prior to trial. Arellin's medical records were never turned over to Defendant, although the State maintains that it never received them. The State argues that because Defendant obtained Apodaca's medical records in October 2009, and conducted pretrial interviews starting in April 2010, Defendant had adequate time to investigate the severity of the injuries and obtain a medical expert on the subject.

**{19}** As with missing evidence:

> In considering whether late disclosure of evidence requires reversal, a reviewing court will consider the following factors: (1) whether the [s]tate breached some duty or intentionally deprived the defendant of evidence; (2) whether the improperly non-disclosed evidence was material; (3) whether the non-disclosure of the evidence prejudiced the defendant; and (4) whether the trial court cured the failure to timely disclose the evidence.

*State v. Duarte*, 2007-NMCA-012, ¶ 15, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted). The State had a duty to disclose the medical records and photographs. Rule 5-501(A)(4). Defendant argues that the records and photographs were material because they were necessary to cross-examine Arellin

15

regarding his injuries and acquire and prepare an expert to discuss the gruesome injuries. "[I]n the context of the late disclosure of information, for evidence to be material[,] there must be a reasonable probability that the outcome of the proceedings would have been different had the information been disclosed earlier." *Duarte*, 2007-NMCA-012, ¶ 18. Defendant admits that Arellin was cross-examined about his injuries and does not explain how an expert could rebut photographic evidence.

{20} Defendant maintains that these discovery violations resulted in cumulative prejudice when viewed in the aggregate. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. As Defendant cannot show the materiality of each alleged error, we do not find them prejudicial in aggregate, nor worthy of reversal.

**C.    Admission of the Knife Was Not Error**

{21} We review a district court's decision whether to admit or exclude evidence for abuse of discretion. *Ruiz v. Vigil-Giron*, 2008-NMSC-063, ¶ 7, 145 N.M. 280, 196 P.3d 1286 (per curiam). We will find no abuse of discretion when the State shows that, by a preponderance of the evidence, the item of evidence is what it purports to be. *See State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. To be admissible, the evidence must be relevant. *See* Rule 11-402 NMRA. Any doubts

16

about admissibility should be resolved in favor of admitting the evidence. *State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845.

{22} According to the testimony at trial, Defendant reached in the back seat of the car prior to the fight. One witness testified that she saw a "little short knife" in Defendant's hand, and the bar bouncer, who broke up the fight, testified that Defendant had an object in his bloody right hand, although the bouncer could not be sure that it was a knife.

{23} The district court admitted into evidence a knife that Defendant was wearing on his belt when he was arrested by officers two days after the incident. The knife was taken because weapons are seized as a matter of policy during an arrest. The knife was neither tested to determine if it could be connected with the crime, nor shown to treating physicians to compare to Apodaca's and Arellin's wounds. The officer testified that there was nothing apparent on the knife at the time of the trial that looked like blood. Defendant's brief appears to admit that a knife was indeed used to cause the injuries, but argues that introducing this particular knife was only relevant to Defendant's propensity to carry a knife. He argues that admitting it into evidence was therefore insufficiently supported and overly prejudicial.

{24} Assuming that the knife was erroneously admitted, we regard the error as harmless. We see no reasonable probability that its admission affected the verdict. *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198, *overruled on other*

17

*grounds by State v. Tollardo*, 2012-NMSC-008, 275 P.3d 110. The jury could have easily inferred that a sharp object capable of inflicting deep and long wounds was wielded by Defendant during the fight based on the testimony that a sharp object was in his hand and the nature of the victims' injuries. It is the jury's job to reconcile the evidence of a knife at the scene with Defendant's denial of possessing or using one at the time. *Gonzales v. Gen. Motors Corp.*, 1976-NMCA-065, ¶ 10, 89 N.M. 474, 553 P.2d 1281 ("[W]here the evidence is inconsistent or contradictory, it is the function of the jury to resolve the conflict and not the function of this Court to resolve the conflict as a matter of law."). The jury could have reached their conclusion irrespective of the admission of the knife.

{25} Defendant alleges that the knife's admission was made more prejudicial due to use of a jury instruction that stated aggravated battery was committed against Apodaca and Arellin using a "knife." The argument is not that the instruction itself was improper, but that it emphasized the introduction of evidence that should have been excluded.

{26} Although Defendant alleged that the district court had committed to an instruction reading "knife or other sharp object[,]" we note that the instructions were unresolved at the time he discusses. Defendant calls attention to the instruction only to bolster his challenge to the admission of the knife taken from him. We note the testimony that Defendant possessed a bladed object at the time of the fight. Although

18

the instruction is troubling, given the amount of evidence that supported the verdict and thus renders admission of the knife harmless error, we cannot agree with Defendant.

## II.     The State Did Not Overreach in its Rebuttal Argument

{27}     Defendant finally argues that the district court erred by rejecting his objection to the State's rebuttal argument, which he claims was merely a restatement of its first closing.  The State counters that the rebuttal argument was within the wide latitude permitted in closings.  Because Defendant objected, we review under an abuse of discretion standard.  *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348 ("Where error is preserved at trial, an appellate court will review under an abuse of discretion standard.").

{28}     The governing rule provides that "the state may make the opening argument[,] . . . the defense may make its argument[, and] the state may make rebuttal argument only." Rule 5-607(M)-(O) NMRA.  "The trial court has wide discretion in controlling counsel's argument to the jury, and when there is no abuse of discretion or prejudice to a defendant, there is no error." *State v. Sanchez*, 1995-NMSC-053, ¶ 19, 120 N.M. 247, 901 P.2d 178.  The rule "provides that the [s]tate opens the closing argument, the defense then argues[,] and the 'state may make rebuttal argument only.'" *State v. King*, 1977-NMCA-042, ¶ 27, 90 N.M. 377, 563 P.2d 1170, *overruled on other grounds by State v. Reynolds*, 1982-NMSC-091, 98 N.M. 527, 650 P.2d 811.  In *King*,

19

the defendant claimed that "the [s]tate asserted its theory of the case for the first time during its rebuttal argument and that [the] defendant was prejudiced because unable to respond to the new theory." 1977-NMCA-042, ¶ 27. The court in that case held that the argument was "frivolous." *Id.* "The rebuttal argument, even when taken out of context as [the] defendant [did], [was] fairly within the evidence and consistent with the [s]tate's theory of first[-]degree murder presented throughout the trial, including its opening argument." *Id.*

{29} In the case at hand, early in its rebuttal, the State mentioned Defendant having a conversation with one of the victims earlier in the evening inside the bar. Defendant objected, claiming that talking about events inside the bar was outside the scope of rebuttal. The district court concluded that counsel for the State may reply to Defendant's argument "in a way that he feels is best suited for him and the case." Defendant brought the matter up again after the jury began deliberating, moving for a mistrial based on the argument that the State got two chances to do a closing, rather than limiting itself to a closing and a rebuttal. The district court denied the motion, finding that the rebuttal responded to matters raised by the defense. The defense, in closing, discussed events inside the bar, such as how much the various participants drank. Defendant specifically mentioned Arellin inside the bar. Because the rebuttal argument was consistent with the State's theory of the case, we conclude that the district court did not err in permitting the State to proceed with its rebuttal.

20

**III.    CONCLUSION**

{30}    Defendant's assertions of error, regarding his request for a self-defense instruction, his choice to testify, various discovery matters, admittance of the knife he had when arrested, and the State's rebuttal, all fail.  We affirm the district court.

{31}    **IT IS SO ORDERED.**


_____
                                        **RODERICK T. KENNEDY, Chief Judge**


**WE CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**


_____
**J. MILES HANISEE, Judge**